**Albert L. ALLEN, Appellant,**

v.

**STATE of Alaska, Appellee.**

No. A–5922.

Court of Appeals of Alaska.

Sept. 12, 1997.

Rehearing Denied Oct. 29, 1997.

---

Christine S. Schleuss, Anchorage, for Appellant.

Kenneth M. Rosenstein, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before BRYNER, C.J., and COATS and MANNHEIMER, JJ.

## OPINION

MANNHEIMER, Judge.

Albert L. Allen was convicted of second-degree murder, AS 11.41.110(a), stemming from an altercation with another man. At his trial, Allen claimed that he acted in self-defense—that the ostensible victim was in fact the first aggressor. The State countered with evidence that Allen himself had acted violently on past occasions (thus suggesting that Allen had been the first aggressor).

Allen's attorney objected to the State's evidence of Allen's past violent acts. The defense attorney first argued that the rules of evidence do not allow the State to introduce evidence of a defendant's character for violence, even after the defense has introduced evidence of the victim's character for violence. Alternatively, the defense attorney argued that even if the rules of evidence authorized the State to introduce evidence of Allen's character for violence, Alaska Evidence Rule 405 limited the State to proving Allen's character by means of reputation or opinion evidence, and it barred the State

from introducing evidence of specific instances of Allen's violence.

As we explain in more detail below, we agree with Allen that Evidence Rule 405 barred the State from introducing evidence of particular instances of Allen's violent behavior. We therefore reverse Allen's conviction.

### Facts of the case [1]

In the early morning hours of June 15, 1994, Devron Labat, Julie Yourell, and Mindy Famulski were driving around Anchorage. They decided to visit Allen's apartment to speak to him about a friend of theirs, Michelle Acquino. There was some tension between Labat and Allen, because Acquino had had intimate relations with both men.

Yourell and Labat came to Allen's door. When Allen answered, Yourell asked him whether Acquino was present in the apartment. Allen replied that she was not. Yourell apparently did not believe Allen. At this point, Labat (who had been standing to one side) entered the doorway. It appeared to Allen that Labat was holding something behind his back.

Allen repeated that Acquino was not there. In response, Labat threatened to kill Allen. Allen then heard a sound like the cocking of a handgun. Yourell encouraged Labat to "smoke" Allen (*i.e.*, shoot him).

Allen retreated into his apartment and closed the door. He called 911, but during his ensuing conversation with the emergency dispatcher, Allen told the dispatcher that he would handle the situation himself. At this point, Allen saw a shadow outside his bedroom window. Fearing that Labat was getting ready to shoot him, Allen retrieved a knife from his kitchen and then crawled out the bedroom window, knife in hand, to "see what was going on".

As Allen patrolled the area outside his house, he discovered Labat kneeling by a parked truck. Labat ran away, and Allen gave chase. Eventually, Labat stopped running and turned to face Allen. Allen stabbed Labat; he then dropped the knife and began a hand-to-hand struggle with Labat. Labat died as a result of the stab wound, and Allen was indicted for first-degree murder.

### *Evidence of Allen's character for violence: admissibility*

At trial, Allen asserted that he had acted in self-defense when he armed himself with the knife, chased Labat, and ultimately stabbed him. To rebut Allen's assertion that Labat had been the first aggressor, the State introduced evidence tending to prove Allen's character for violence—specifically, evidence that Allen had been convicted of assault in 1987 and that Allen had assaulted Michelle Acquino with a sword or machete in 1993. On appeal, the parties continue to dispute the admissibility of this evidence.

At common law, when a criminal defendant asserted that the ostensible victim of an assault or a homicide had in fact been the initial aggressor, the defendant was entitled to introduce evidence of the victim's character for violence, as circumstantial evidence that the victim had acted violently during the episode in question. The government was then entitled to introduce rebutting evidence of the victim's character for peacefulness. John W. Strong et al., *McCormick on Evidence* (4th ed.1992), § 193, p. 820–21 & n. 1.

One might argue that these two types of character evidence did not really round out the picture—that if the question is to identify the initial aggressor, the characters of both the defendant and the victim (for violence or for peacefulness) are equally relevant. This was the view espoused by Professor John Wigmore. *Wigmore on Evidence* (Tillers rev'n 1983), § 63, Vol. 1A, pp. 1372–73.

However, in *Keith v. State,* 612 P.2d 977 (Alaska 1980), the Alaska Supreme Court rejected the notion that "proof of the character of the victim and the accused [were] interrelated". *Id.*, at 984. The court recog-

---

1. Because the ultimate issue in this case is whether Allen acted in self-defense, the facts are presented in the light most favorable to Allen. *Compare Paul v. State,* 655 P.2d 772, 775 (Alaska App.1982) (a defendant is entitled to an instruc-

tion on self-defense if the evidence, "viewed in the light most favorable to the accused, might arguably lead a juror to entertain a reasonable doubt as to the defendant's guilt").

nized ·that "one could plausibly argue . . . [that] evidence of the defendant's character for violence does tend to 'rebut' proof of the victim's character [for violence] offered to prove that he was the first aggressor". *Id.* at 985 n. 23 (quoting Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure, Evidence* (1978), § 5237, p. 406). The court nevertheless concluded that, under the version of Evidence Rule 404(a) that was in effect in 1980, "the character of the accused and [the character] of the victim were intended to be separable", so that "the defendant [could] attack the character of the victim without exposing his own character to prosecutorial attack". *Id.*

█ In 1994, the Alaska Legislature changed this result by amending Evidence Rule 404(a)(2). Rule 404(a)(2) now authorizes trial courts to admit evidence of a defendant's character for violence when this evidence is offered by the government to rebut a claim that the victim was the first aggressor. *See* 1994 SLA ch. 116, section 2. In its present form, Rule 404(a)(2) states:

> Evidence of a person's character or a trait of character is not admissible ·for the purpose of proving that the person acted in conformity therewith on a particular occasion, except:
>
> . . .
>
> (2) Character of Victim [sic]. Evidence of a relevant trait of character of a victim of crime offered by an accused, or by the prosecution ·to rebut the same, *or evidence of a relevant character trait of an accused or of a character trait for peacefulness of the victim offered by the prosecution in a case to rebut evidence that the victim was the first aggressor[.]*

(The language added by the legislature in 1994 is in italics.) Under this rule of evidence, evidence of Allen's character for violence was· admissible to rebut Allen's claim that Labat was the initial aggressor.

█ Allen argues that the amended version of Evidence Rule 404(a)(2) did not, and lawfully could not, govern the admission of evidence at his trial. Allen points out that

his offense is alleged to have occurred on June 15, 1994, while the amended version of Evidence Rule 404(a)(2) did not take effect until three months later (September 15, 1994). Because the amended version of the rule took effect after his alleged crime, Allen contends that application of this evidence rule at his trial would be "retrospective", in violation of both AS 01.10.090 [2] and the *ex post facto* clauses of the United States Constitution and the Alaska Constitution.[3]

Allen relies on language from *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987), where the Supreme Court stated that the *ex post facto* clause forbids application of any retrospective law that "disadvantage[s] the offender affected by it". He argues that he was disadvantaged by the amendment of Evidence Rule 404(a)(2) because, under prior evidence law, the government would not have been able to introduce evidence ˙of his character for violence. However, the language from *Miller* is an over-simplification of the *ex post facto* test. In *California Dept. of Corrections v. Morales,* 514 U.S. 499, 115 S.Ct. 1597, 131 L.Ed.2d 588 (1995), the Supreme Court disavowed *Miller*'s phrasing of the test, as well as similar phrasing the Court had used in *Weaver v. Graham,* 450 U.S. 24, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981), and *Lindsey v. Washington,* 301 U.S. 397, 57 S.Ct. 797, 81 L.Ed. 1182 (1937). The *Morales* Court stated:

> Our opinions in *Lindsey, Weaver,* and *Miller* suggested that enhancements to the measure of criminal punishment fall within the *ex post facto* prohibition [if] they operate to the "disadvantage" of covered offenders. *See Lindsey,* 301 U.S. at 401, 57 S.Ct. at 799; *Weaver,* 450 U.S. at 29, 101 S.Ct. at 964; *Miller,* 482 U.S. at 433, 107 S.Ct. at 2452–53. . . . [T]hat language was unnecessary to the results in those cases and is inconsistent with the framework developed in *Collins v. Youngblood,* 497 U.S. 37, 41, 110 S.Ct. 2715, 2718, 111 L.Ed.2d 30 (1990). After *Collins,* the focus of the *ex post facto* inquiry is not on

---

**2.** "No statute is retrospective unless expressly declared therein."

**3.** United States Constitution, Art. I, Sec. 10; Alaska Constitution, Art. I, Sec. 15.

whether a legislative change produces some ambiguous sort of "disadvantage"[.] ... [Rather, the test is] whether any [new law] alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

*Morales,* 514 U.S. at 506 n. 3, 115 S.Ct. at 1602 n. 3.

■ Under *Collins v. Youngblood* (cited in the just-quoted passage from *Morales* ), the *ex post facto* clause prohibits the retrospective application of laws that "alter the definition of crimes or increase the punishment for criminal acts". 497 U.S. at 43, 110 S.Ct. at 2719. The amendment of Evidence Rule 404(a)(2) does neither.

Moreover, we conclude that the amendment to Evidence Rule 404(a)(2) was not applied "retrospectively". Evidence rules generally do not alter people's rights or liabilities; rather, they govern the admission of evidence in court proceedings where those rights and liabilities are litigated. Intuitively, one would suppose that evidence rules are, by nature, prospective: that is, newly enacted evidence rules will normally be applied only at court proceedings held after their enactment. This accords with the rule that "a court is to apply the law in effect at the time it renders its decision". *Bradley v. Richmond School Board,* 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974).

It is, of course, possible to argue that any litigation concerning an event should be governed by the evidence rules that were in effect at the time of that event. However, the law's presumption against retrospective legislation is not applied so broadly.

A statute does not operate "retrospectively" merely because it is applied in a case arising from .conduct antedating the statute's enactment [or because it] upsets expectations based on prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment.

. . .

Changes in procedural rules may often be applied in suits arising before their enactment[.] ... Because rules of procedure regulate secondary rather than pri-

mary conduct, the fact that a new procedural rule was instituted after the conduct giving rise to the suit does not make application of the rule at trial retroactive.

*Landgraf v. USI Film Products,* 511 U.S. 244, 269–270, 275, 114 S.Ct. 1483, 1499, 1502, 128 L.Ed.2d 229 (1994) (citations and footnotes omitted).

With regard to Allen's specific contention—his argument that recently-enacted evidence rules should not be applied at the trial of a lawsuit based on events that pre-date the enactment of those evidence rules—we note that the United States Supreme Court has repeatedly rejected this argument in its *ex post facto* cases. *See .Collins v. Youngblood, supra,* 497 U.S. at 43 n. 3, 110 S.Ct. at 2719 n. 3; *Thompson v. Missouri,* 171 U.S. 380, 387–88, 18 S.Ct. 922, 924–25, 43 L.Ed. 204 (1898). See also *State v. Creekpaum,* 753 P.2d 1139, 1143 (Alaska 1988), where the Alaska Supreme Court declared that it "saw no reason to construe [Alaska's] *ex post facto* prohibition ... differently from [its] federal [counterpart]".

■ Under these precedents, we conclude that AS 01.10.090 (the statutory prohibition against retrospective legislation) does not bar a trial judge from applying a recently-enacted evidence rule at the trial of a lawsuit based on events that pre-date the enactment of the evidence rule. We further conclude that the *ex post facto* clause does not give Allen the right to insist on application of the evidence rules that were in effect on the date of his alleged crime. Thus, the trial judge was correct when she applied Evidence Rule 404(a)(2) at Allen's trial.

■ Allen next argues that the amended version of Evidence Rule 404(a)(2) denies him the due process of law guaranteed by the Fourteenth Amendment to the United States Constitution and Article I, Section 7 of the Alaska Constitution. Allen basically argues that evidence of a defendant's bad character is invariably so prejudicial that no jury will be able to return a fair verdict after hearing it. We conclude that Allen's due process attack is baseless.

As courts and commentators have repeatedly recognized, evidence of a person's

character is relevant to assessing their likely actions. *See Wigmore on Evidence* (Tillers rev'n 1983), § 55, Vol. 1A, pp. 1157–1160; *McCormick on Evidence* (4th ed.1992), § 188, p. 793. In particular, evidence of a defendant's good or bad character is relevant when determining the likelihood that the defendant did or did not commit a crime.

Allen objects that this use of character evidence—as circumstantial proof of a defendant's likely conduct during a particular episode—amounts to "propensity" evidence, a type of evidence normally prohibited. This is true, but it is not a valid objection to admission of the evidence. As we explained in *McCracken v. State,* 914 P.2d 893, 898 (Alaska App.1996), character evidence admitted under Evidence Rule 404(a)(2) "is introduced for the very purpose normally barred by the evidence rules: to prove that [a person] acted in conformity with his or her [character] trait".

The law traditionally allowed criminal defendants the option of deciding whether to allow litigation of their character. A defendant could open the subject of character by introducing evidence of his or her good character; once this occurred, the government could introduce rebuttal evidence of the defendant's bad character. *Michelson v. United States,* 335 U.S. 469, 479, 69 S.Ct. 213, 220, 93 L.Ed. 168 (1948). However, the government was not permitted to act first by independently introducing evidence of the defendant's bad character. *Id.,* 335 U.S. at 475–76, 69 S.Ct. at 218–19. This bar was based, not on the theory that the defendant's character lacked relevance, but rather on the policy consideration that a jury might be tempted to relax the government's normal burden of proof if they were convinced that the defendant was a bad person:

> [Evidence of a defendant's bad character] might logically be persuasive that he is by propensity a probable perpetrator of the crime. The inquiry [into character] is not rejected because character is irrelevant; on the contrary, it is said to weigh too much with the jury and to so [ ]persuade them ... to prejudge one with a bad general record and deny him a fair opportu-

ty to defend himself against [the] particular charge.

*Michelson,* 335 U.S. at 475–76, 69 S.Ct. at 218. *See also Wigmore on Evidence, supra,* § 54.1, Vol. 1A, pp. 1150–56.

Because of the competing relevance and potential prejudice of character evidence, the common law put the weighing in the defendant's hands: if the defendant judged that he or she would ultimately benefit from a litigation of his or her character, then character evidence (both good and bad) would be heard. This common-law rule itself strongly suggests that Allen's due process argument is misguided. If evidence of a defendant's bad character were invariably so prejudicial as to destroy any possibility of a fair trial, then the common-law rule and the former version of Alaska Evidence Rule 404(a) would be unconstitutional—since they allowed the prosecution to introduce evidence of a defendant's bad character (after the defendant "opened the door" by introducing evidence of his or her good character).

Moreover, it is important to note that the amended version of Evidence Rule 404(a)(2) does not eliminate the weighing of relevance versus potential prejudice. Instead, under Evidence Rule 404(a)(2)(i)-(iii), this weighing is now done by the court. When either party seeks to admit character evidence under Rule 404(a)(2), that party must first make application to the court. *See* Evidence Rule 404(a)(2)(i). The admission of this evidence is then governed by the following procedure:

> (ii) The court shall conduct a hearing outside the presence of the jury in order to determine whether the probative value of the evidence is outweighed by the danger of unfair prejudice, confusion of the issues, or unwarranted invasion of the privacy of the victim. The hearing may be conducted *in camera* where there is a danger of unwarranted invasion of the privacy of the victim.

> (iii) The court shall order what evidence may be introduced and the nature of the questions which shall be permitted.

It is clear, from these provisions, that the legislature recognized the potential danger of introducing character evidence at a criminal trial; they took steps to ensure that, before

character evidence was admitted, the trial judge would actively weigh the probative force of the evidence against its potential for unfair prejudice. Allen's due process attack on Rule 404(a)(2) thus reduces to the following question:

> whether it is acceptable to deal with the potential for abuse [of character evidence] through nonconstitutional sources like the ... [r]ules of [e]vidence, or whether the introduction of this type of evidence is so extremely unfair that its admission violates "fundamental conceptions of justice."

*Dowling v. United States,* 493 U.S. 342, 352, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990) (footnote and citation omitted).

As explained above, courts and commentators universally recognize that character evidence is relevant because it is circumstantial proof of a person's likely actions. For this reason, the law has traditionally allowed character evidence to be admitted at criminal trials to prove the likely identity of the initial aggressor—both as circumstantial proof of the victim's actions and, at the defendant's option, as circumstantial proof of the defendant's actions. Although the Alaska Legislature has broadened the instances in which character evidence can be admitted, the underlying relevance of the evidence remains unchanged. Moreover, the legislature has specifically provided a judicial safeguard against abuse of character evidence. We conclude that Evidence Rule 404(a)(2) does not violate the guarantee of due process.

*Evidence of Allen's character for violence: permissible methods of proof*

■ Because Evidence Rule 404(a)(2) authorized the State to offer evidence of Allen's character for violence, the remaining question is whether the State was authorized to prove Allen's character for violence by introducing evidence of his specific acts of violence. We conclude that the answer is "no": in criminal cases involving claims of self-defense, Evidence Rules 404(a)(2) and 405 allow only reputation and opinion evidence to prove the character of the defendant or the victim.

While Evidence Rule 404(a) lists the instances in which character evidence is admissible to prove that a person acted in conformity with their character, another evidence rule—Evidence Rule 405—governs the method of proof in "all cases in which evidence of character or a trait of character ... is admissible". Under Rule 405(a), when a party seeks to prove a person's character or trait of character,

> proof may be made by testimony as to [the person's] reputation in any community or group in which the individual habitually associated or by testimony in the form of an opinion.

Except for cases governed by Rule 405(b) (discussed below), these two methods of proof—reputation evidence and opinion evidence—are intended to be the sole means by which a party can establish a person's character. *See* Commentary to Evidence Rule 405(a), first, third, and fifth paragraphs; Commentary to Evidence Rule 405(b), first paragraph.

■ Rule 405(a) does allow inquiry into specific instances of a person's conduct, but only during cross-examination. That is, when a party attempts to prove a person's character by presenting a "character witness" who either has an opinion concerning the person's character or who knows of the person's reputation in the community, the opposing parties are allowed on cross-examination to inquire into the person's specific acts (to the extent these acts are relevant to the character trait being litigated). Thus, evidence of a person's specific acts is admissible to rebut an assertion concerning a person's character, but evidence of specific acts is normally not admissible to establish character.

The exception to this general rule is found in Evidence Rule 405(b):

> (b) *Specific Instances of Conduct.* In cases in which [a person's] character or a trait of character is an essential element of a charge, claim, or defense, proof may also be made [by introducing evidence] of specific instances of [the person's] conduct.

As explained in the commentary to Evidence Rule 405(b), the distinction drawn by Rule 405(b) is between (a) cases in which a person's character is being used as circumstan-

tial evidence of their likely conduct on a particular occasion, and (b) cases in which a person's character or trait of character is an essential element of a claim or defense—that is, when a litigant must, as a matter of law, prove a person's character in order to prevail. The first paragraph of the commentary states:

> Of the three methods of proving character provided by the rule, evidence of specific instances of conduct is the most convincing. At the same time[,] it poses the greatest capacity to arouse prejudice, to confuse, to surprise, and to consume time. Consequently the Rule confines the use of evidence of this kind to cases in which character is, in the strict sense, in issue and hence deserving of a searching inquiry. When character is used circumstantially and hence occupies a lesser status in the case, proof may be only by reputation and opinion. These latter methods are also available when character is in issue. This treatment is, with respect to specific instances of conduct and reputation, [in accord with] conventional contemporary common law doctrine. *McCormick [on Evidence]* (2d ed. [1972] )[,] §§ [186–]187[, pp. 442–43].

In Allen's case, the charge was murder and the defense was self-defense. As part of his defense of self-defense, Allen asserted that Labat had been the first aggressor in their encounter. *See* AS 11.81.335(a) and AS 11.81.330(a). Under Evidence Rule 404(a)(2), Allen was authorized to support this assertion with evidence of Labat's character for violence. Similarly, once Allen asserted that Labat had been the first aggressor, the State was authorized to offer evidence concerning Allen's own character for violence.

■ However, neither Labat's character for violence nor Allen's character for violence was "an essential element" of the State's murder charge or of Allen's self-defense defense. The jury could adopt Allen's self-defense theory even if they concluded that Labat was not a characteristically violent man; that is, a characteristically peaceful person may yet be an aggressor. Similarly, the jury could acquit Allen under a self-defense theory even if they concluded that

Allen was characteristically given to violence; the defense of self-defense is available to all, even to characteristically violent people. By the same token, the jury could reject Allen's claim of self-defense and convict Allen of murder even if they disbelieved the State's evidence of Allen's violent character and instead concluded that Allen was, by nature, a peaceful man.

■ In sum, when a defendant raises a claim of self-defense and the court admits evidence of either the victim's or the defendant's character for violence or non-violence, this evidence is not admitted to prove an essential element of the crime or of the defense. The character evidence is relevant, not because character is an essential element of self-defense, but because the participants' character is circumstantial proof of the participants' likely conduct during the episode in question. This being so, Evidence Rule 405 limits the parties to the use of reputation or opinion evidence when they seek to prove the victim's or the defendant's character.

Our conclusion is reinforced by the interpretation given to Federal Evidence Rule 405. (Alaska's Evidence Rule 405 is modeled upon Federal Evidence Rule 405. *See* Commentary to Alaska Evidence Rule 405, third paragraph.) In cases involving claims of self-defense, when a person's character for violence or non-violence is being litigated, Federal Rule 405 has consistently been interpreted as limiting the proof to reputation and opinion evidence, and as prohibiting proof of specific acts. *See* Stephen A. Saltzburg, Michael M. Martin, and Daniel J. Capra, *Federal Rules of Evidence Manual* (6th ed.1994), Rule 405, p. 448; Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence* (2nd ed.1997), § 405.05[03], Vol. 2, pp. 405–39 to 405–40; Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* (2nd ed.1994), § 119, Vol. I, pp. 709–710.

For federal cases recognizing and applying this limitation, see *United States v. Keiser,* 57 F.3d 847, 855–57 (9th Cir.1995), *cert. denied,* — U.S. —, 116 S.Ct. 676, 133 L.Ed.2d 525 (1995) (after careful analysis of this point of law, the court concluded that Rule 405 barred the defendant from intro-

ducing evidence of the victim's specific acts to prove the victim's aggressive character, because the victim's character was not an essential element of the defendant's self-defense claim); *United States v. Talamante*, 981 F.2d 1153, 1156 (10th Cir.1992) (same); *Perrin v. Anderson*, 784 F.2d 1040, 1045 (10th Cir.1986) (same); *United States v. Barry*, 814 F.2d 1400, 1402–04 (9th Cir.1987) (defendant, attempting to prove his own good character, could not introduce evidence of various specific instances of his good conduct); *United States v. Hill*, 40 F.3d 164, 168–69 (7th Cir.1994), *cert. denied*, 514 U.S. 1029, 115 S.Ct. 1385, 131 L.Ed.2d 238 (1995) (same); *United States v. Gravely*, 840 F.2d 1156, 1164 (4th Cir.1988) (same); *United States v. Piche*, 981 F.2d 706, 712–13 (4th Cir.1992) (defendant could not introduce evidence of specific acts to prove the victims' character for violence because the victims' character was relevant only as circumstantial evidence of their likely actions); *United States v. Kills Ree*, 691 F.2d 412, 414 (8th Cir.1982) (same).

State courts construing their own counterparts to Federal Evidence Rule 405 reach the same conclusion: *Halfacre v. State*, 277 Ark. 168, 639 S.W.2d 734, 735–36 (1982), and *McClellan v. State*, 264 Ark. 223, 570 S.W.2d 278, 279–280 (1978); *Klaes v. Scholl*, 375 N.W.2d 671 (Iowa 1985); *State v. Doherty*, 437 A.2d 876, 877–78 (Me.1981); *State v. Buchanan*, 431 N.W.2d 542, 551 (Minn.1988); *McDonald v. State*, 538 So.2d 778, 779–780 (Miss.1989); *State v. Arney*, 731 S.W.2d 36, 40 (Mo.App.1987); *State v. McCarter*, 93 N.M. 708, 604 P.2d 1242, 1245–46 (1980); *Dahlen v. Landis*, 314 N.W.2d 63, 70–71 (N.D.1981); *State v. Woodson*, 181 W.Va. 325, 382 S.E.2d 519, 522–24 & n. 5 (1989); *Werner v. State*, 66 Wis.2d 736, 226 N.W.2d 402, 405–06 & n. 6 (1975).

We recognize that this court's decision in *Amarok v. State*, 671 P.2d 882 (Alaska App. 1983), is seemingly at odds with this interpretation of Evidence Rule 405. *Amarok* was a self-defense case in which the defendant unsuccessfully tried to introduce evidence of the victim's specific acts of violence. We held that this specific-act evidence should have been admitted because it "was necessary to enable the jury to determine how much force a person with Amarok's knowledge of [the victim's] propensity for violence would have felt compelled to use in self-defense". *Id.*, 671 P.2d at 883.

There is nothing wrong with this holding. However, this court's ensuing discussion of the law of evidence contains some inexact language. In particular, we stated in *Amarok* that, in self defense cases,

> specific instances of the victim's prior [violent] conduct are considered to be admissible under Evidence Rule 405(b) to show (1) who was the aggressor, in which case the defendant's knowledge of the [prior] incident[s] is immaterial, and (2) that [the] defendant acted reasonably in using the degree of force he did, in which case [the] defendant must know of the victim's past acts of violence.

*Amarok*, 671 P.2d at 883–84 (citation omitted). This passage addresses two different points of evidence law. Only the second point (introduction of evidence to prove the defendant's state of mind and the reasonableness of the defendant's actions) was at issue in *Amarok*. The first point of evidence law (introduction of evidence to prove the victim's character for violence, as circumstantial evidence of the victim's actions) was not at issue in *Amarok*—and, as occasionally happens when courts make pronouncements about matters that are not at issue, we misdescribed this area of the law.

The issue in *Amarok*, as stated in the holding, was "Amarok's knowledge of [the victim's] propensity for violence". *Amarok* held that evidence of a defendant's knowledge of the victim's specific acts of violence is admissible for this purpose. This holding is unobjectionable.

When a defendant is aware of the victim's past acts of violence, and evidence of those acts of violence is offered to prove the reasonableness of the defendant's use of defensive force, this evidence of the victim's specific acts is not barred by Evidence Rule 405—because the evidence is not being used as "character evidence" of the type governed by Evidence Rules 404(a) and 405. We recently explained this distinction in *McCracken v. State, supra:*

[W]hen evidence of the victim's character for violence is introduced ... to prove the reasonableness of the defendant's fear of imminent deadly attack[ ], it is not being used as "character evidence" in the usual sense. Although evidence of a victim's reputation for violence or a victim's past acts of violence may, indeed, tend to show that the victim had a violent character, the primary relevance of the evidence is not to prove the victim's violent character, nor to prove that the victim acted in conformity with a violent character at the time of the incident in question. Rather, the primary relevance of this evidence is to prove the defendant's state of mind when he or she used deadly force against the victim—in particular, the reasonableness of the defendant's fear that the victim was about to attack with deadly force.

. . .

As *Wigmore* explains [J.H. Wigmore, *Evidence in Trials at Common Law* (Chadbourne rev'n 1979), § 248], "the real purpose [of this evidence] is merely to show such conduct as would naturally excite apprehension [on the part of the defendant], whether it objectively indicates a fixed trait of [the victim's] character or not." [Vol. 2,] p. 71.

*McCracken*, 914 P.2d at 898–99. (In the second paragraph of this quote, the first and last bracketed texts have been added; the middle three are in the original.)

The law is different, however, when the question is to identify the first aggressor, and when evidence of a participant's character for violence is offered as circumstantial evidence tending to show that this person, if they acted true to character, was probably the first aggressor. *Amarok* erroneously asserts that evidence of a person's specific acts of violence is admissible for this purpose as well; it is not.

At common law, courts reached differing conclusions about the admissibility of specific-act evidence to establish character for violence and, thus, to identify the likely first aggressor. The Alaska Supreme Court recognized this split in *Pedersen v. State*, 420 P.2d 327, 336 (Alaska 1966), but did not resolve the issue. Fourteen years later, in *Loesche v. State*, 620 P.2d 646 (Alaska 1980), the supreme court again confronted this issue but did not need to resolve it. The defendant in *Loesche* wished to introduce evidence that the victim had engaged in violent conduct toward third parties. The supreme court offered some general observations about the law of evidence in this area:

[E]vidence establishing the turbulent or dangerous character of the victim is deemed admissible in many jurisdictions, and may be shown by reputation and opinion testimony, and, occasionally, by particular instances of violent conduct. Given the proper foundation, most of these jurisdictions allow testimony concerning specific instances of the victim's past conduct when it is offered either to corroborate the reasonableness of the defendant's alleged apprehensions of the victim or to corroborate the defendant's self-defense claim by demonstrating the probability that the victim, rather than the defendant, was the actual aggressor.

*Loesche*, 620 P.2d at 650–51 (footnotes and citations omitted). However, as in *Pedersen*, the court did not need to resolve Alaska law on this point. Instead, the court concluded that even if the evidence was potentially admissible, the trial judge acted within his discretion in excluding the evidence: Loesche had already introduced testimony "about a recent threat the victim had made to [Loesche] at a local bar", and the trial judge had already allowed the defense to present several character witnesses (including a state trooper), who testified that the victim was known as a violent person. *Loesche*, 620 P.2d at 651.

■ *Loesche*, like *Pedersen*, was decided under the law of evidence as it existed before the promulgation of Alaska's current rules of evidence.[4] When the court promulgated the current evidence rules—in particular, Evi-

---

**4.** *Loesche* was decided in October 1980, a little over one year after the effective date of the current rules of evidence (August 1, 1979). *See* Supreme Court Order 364. However, the court specifically noted that the older rules of evidence were in effect at the time of Loesche's trial. *Loesche*, 620 P.2d at 649.

dence Rule 405—the court resolved this issue of evidence law. As we have already explained, Evidence Rule 405(a) allows a person's character for violence to be established through reputation and opinion evidence in all cases; however, under Evidence Rule 405(b), a party propounding or opposing a claim of self-defense may not offer evidence of specific acts of violence to prove a person's character for violence.

For these reasons, we conclude that Alaska Evidence Rule 405 did not permit the State to introduce evidence of Allen's specific acts of violence (his 1987 assault conviction and his 1993 attack on Michelle Acquino) to prove Allen's character for violence. Having reviewed the record of Allen's trial, we further conclude that there is a substantial possibility that this wrongly admitted evidence affected the jury's verdict. Allen is therefore entitled to a new trial. *Love v. State*, 457 P.2d 622, 629–631 (Alaska 1969).

The judgement of the superior court is REVERSED.