James S. FUZZARD, Jr., Appellant,

v.

STATE of Alaska, Appellee.

No. A–7206.

Court of Appeals of Alaska.

Dec. 1, 2000.

☞250.2(3)

☞369.2(4)

Susan Downie, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

Marcelle K. McDannel, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

STEWART, Judge.

A jury convicted James S. Fuzzard, Jr., of third-degree assault [1] for threatening Bobbi Jo Murphy with a handgun. Fuzzard argues that the superior court erroneously admitted evidence of Fuzzard's prior acts of domestic violence against Murphy under Alaska Evidence Rules 404(b)(1) and (b)(4). Because

---

1. AS 11.41.220(a).

we find no abuse of discretion in the admission of this evidence, we affirm.

*Facts and proceedings*

At one time, Fuzzard and Murphy had lived together, but by November 1997, they were no longer in a serious relationship. Even so, they occasionally spent time together and Fuzzard, who had no car and lived ten miles outside of Fairbanks, sometimes spent the night at Murphy's apartment in town. Fuzzard and Murphy agreed to have Thanksgiving dinner together at the Campbell House restaurant in Fairbanks.

Fuzzard walked into town and arrived at Murphy's apartment in the early afternoon. They had wine before dinner, and, after dinner, stopped at the Miner's Bar for beers. Murphy gave Fuzzard money at the bar and Fuzzard bought cocaine. They returned to Murphy's apartment and did a line or two of cocaine before Murphy's friends joined them for drinks and pie.

After Murphy's friends left, Murphy was tired and decided to lie down. Because Fuzzard was bothering her, she asked him to leave. When Fuzzard asked her what she meant, she told him to leave for good. Fuzzard got angry and upset at her for "wasting [his] time." Fuzzard went into her bedroom and got a .22 caliber revolver and bullets that he had given her a month earlier for her protection. He held the gun a few inches away from her head and said: "I'm going to kill you, you fucking bitch." The gun was loaded and Murphy feared that Fuzzard might kill her.

Murphy made no eye contact with Fuzzard and in a short time, Fuzzard said "Oh, I'm not going to kill you." Murphy got possession of the gun shortly thereafter and tried to unload it but was able to remove only one bullet, so she put it back in. Fuzzard then asked for the gun and Murphy handed it to him. He walked across the room and put the gun on a credenza. When asked why she handed Fuzzard the gun, Murphy explained that Fuzzard no longer seemed as angry and she wanted to avoid a struggle over the gun that might result in an accident.

Murphy said Fuzzard became angry again and told her he could see why her husband divorced her if this was the way she treated people. He called her a "fat fucking pig" and said nobody would want her. He also picked up an open beer and threw it at her. Murphy called the police and Fuzzard left with the gun.

Fairbanks Police Officer Thomas Clarke contacted Fuzzard about a quarter of a mile from Murphy's apartment where he was arrested. Fuzzard did not have the gun. Fuzzard called Murphy from jail and disclaimed any knowledge of the gun. The police found the weapon hours later buried in the snow under a bush near Murphy's apartment.

The grand jury indicted Fuzzard for third-degree assault.

Before trial, Fuzzard moved for a protective order to preclude the State from introducing evidence that in May 1997 he had broken into Murphy's apartment and pulled her phone from the wall when she tried to call the police. In that motion, Fuzzard argued that Evidence Rule 404(b)(4),[2] which permits introduction of prior acts of domestic violence, was unconstitutional. The State opposed the motion and argued that the May 1997 incident was admissible under Evidence Rule 404(b)(1)[3] so the court did not have to

---

2. A.R.E. 404(b)(4) provides:

In a prosecution for a crime involving domestic violence or of interfering with a report of a crime involving domestic violence, evidence of other crimes involving domestic violence by the defendant against the same or another person or of interfering with a report of a crime involving domestic violence is admissible. In this paragraph, "domestic violence" and "crime involving domestic violence" have the meanings given in AS 18.66.990.

AS 18.66.990 provides in relevant part:

(3) "domestic violence" and "crime involving domestic violence" mean one or more of the following offenses or a law or ordinance of another jurisdiction having elements similar to

these offenses, or an attempt to commit the offense, by a household member against another household member:

(A) a crime against the person under AS 11.41[.]

AS 18.66.990 provides in relevant part:

(5) "household member" includes

(B) ... adults or minors who live together or who have lived together[.]

3. A.R.E. 404(b)(1) provides:

Evidence of other crimes, wrongs, or acts is not admissible if the sole purpose for offering the evidence is to prove the character of a person in order to show that the person acted in conformity therewith. It is, however, admissible for other purposes, including, but not

decide the constitutionality of Rule 404(b)(4). The State maintained that the evidence was admissible under Rule 404(b)(1) to establish the reasonableness and actuality of Murphy's fear, the nature and context of the relationship between Fuzzard and Murphy, and Fuzzard's recklessness.

At a hearing several weeks before trial, Superior Court Judge Charles R. Pengilly considered Fuzzard's motion. Judge Pengilly had reviewed the grand jury testimony and noted Murphy's testimony that she had given the gun back to Fuzzard after he had pointed it at her head. Given this evidence, Judge Pengilly expected that Murphy would be subject to "vigorous cross-examination" regarding whether she subjectively and reasonably apprehended serious physical injury. In that context, Judge Pengilly observed that the prior incident would be relevant to show that Murphy was intimidated by Fuzzard.

Fuzzard did not contradict Judge Pengilly's prediction about the content of cross-examination. Instead, Fuzzard responded that he thought the evidence showed that Murphy was not intimidated. Judge Pengilly denied Fuzzard's motion and ruled that the May 1997 incident was admissible on three alternative grounds under Evidence Rule 404(b)(1): to establish the reasonableness and actuality of Murphy's fear, to prove that the assault was not an accident, and to show the nature and context of Murphy's and Fuzzard's relationship. Judge Pengilly also concluded that Rule 404(b)(4) was constitutional and provided another basis for admission of this evidence.

The record shows no further discussion of this issue before opening statements. In opening statements, each party discussed the May 1997 incident. Fuzzard told the jury that Murphy's testimony about the May 1997 incident would support his view that Murphy was not credible, either about the May 1997 incident or the charged assault.

Murphy described the May 1997 incident during direct examination. Murphy claimed that she and Fuzzard argued at the Miner's Bar after Murphy refused to give him money. Later that evening, some people gave Fuzzard money to buy cocaine for them and he left the bar. Fuzzard called Murphy from her apartment and asked her to come over and do some of the coke before he turned it over. Murphy refused and waited until he had left her apartment to return home. Fuzzard came over later and Murphy asked for her keys back. Fuzzard gave Murphy the keys and left, but within ten minutes Fuzzard had climbed up her neighbor's porch and kicked in the screen on her living room window. Murphy testified that she picked up the phone to call 911 because Fuzzard refused to leave. She said Fuzzard responded by pulling the phone out of her hand, severing the cord. Fuzzard left when Murphy tried to wake the neighbors. Murphy said she spent the night at a girlfriend's house.

Murphy also described her conduct on the night of the charged assault. As Judge Pengilly predicted in the pre-trial hearing, Fuzzard cross-examined Murphy about returning the gun to Fuzzard. He questioned her about the claim that Fuzzard had threatened her with the gun.

After cross-examination, Murphy testified about another incident on Labor Day 1996. Murphy and Fuzzard had been drinking together at the Miner's Bar. Murphy returned home at 9:00 or 10:00 p.m. Fuzzard came home later and asked for money, which Murphy refused. A fight ensued and Murphy asked Fuzzard to leave. Murphy said Fuzzard threw the television remote across the room, breaking it, and threw a butcher knife at the ceiling. The knife stuck in the ceiling and the handle fell to the floor. Murphy and Fuzzard agreed that he would gather his things and move out the next day, which he did. That night he slept on the couch.

We have held that evidence of a defendant's prior domestic violence against the victim is admissible in some circumstances to explain the relationship between those two people.[4] Such evidence can be particularly relevant to explain why one person might fear the other, or might submit to the other's will without a struggle.[5] But Fuzzard argues

limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

4. *See Russell v. State*, 934 P.2d 1335, 1341 (Alaska App.1997).

5. *See id.* at 1340–41.

that this evidence should not have been admitted to explain why Murphy handed Fuzzard the gun after he pointed it at her head because Murphy's testimony established no logical connection between his prior acts and her decision to give him the gun. He asserts that the evidence of his prior misconduct did not show that he could overpower Murphy, and that Murphy did not claim that she gave him the gun for this reason.

 But Fuzzard did not state his objection in these terms below. Judge Pengilly could reasonably conclude at the pre-trial hearing that the May 1997 incident was relevant to the jury's evaluation of the reasonableness of Murphy's fear during the charged assault and that the evidence provided some background to explain why she would hand the gun back to Fuzzard after she gained possession of it. It was incumbent on Fuzzard to raise his present argument before Judge Pengilly to preserve this objection.[6]

Fuzzard also argues that Judge Pengilly erred because he did not expressly address whether this evidence was barred by Evidence Rule 403.[7] However, Fuzzard's pretrial memoranda discussed the requirements of Rule 403. And, Judge Pengilly recognized that Rule 403 was an additional limitation on the admission of the evidence while he was considering Fuzzard's motion for a protective order. We conclude from our examination of the record that Judge Pengilly's ruling on the motion implicitly considered whether the probative value of the May 1997 incident outweighed any prejudicial impact.

The parties' first discussion of the details of the Labor Day 1996 incident occurred at trial. Fuzzard conceded that the admissibility of this incident was governed by the court's analysis on Fuzzard's motion for a protective order. Fuzzard did not claim that this incident should be excluded under Rule

403. And there are no circumstances that suggest that Judge Pengilly overlooked the applicability of Rule 403 to the Labor Day 1996 incident.

Furthermore, even if Judge Pengilly erred by admitting evidence of both prior incidents under Rule 404(b)(1), he also concluded that both incidents were admissible under Rule 404(b)(4) because both earlier incidents and this case meet the definition of a "crime involving domestic violence" in the rule.

Fuzzard argues that Evidence Rule 404(b)(4) violates the due process clause of the constitution because it authorizes a court to admit evidence of prior domestic violence for "propensity" purposes—that is, as circumstantial proof that the defendant was likely to engage in the domestic violence charged in the current case. But we have previously ruled that the admission of propensity evidence does not, *per se*, violate due process. In *Allen v. State*,[8] this court acknowledged the law's historical reluctance to admit evidence of a defendant's past misdeeds as evidence of the defendant's criminal propensity.[9] But we rejected the contention that propensity evidence was "invariably so prejudicial as to destroy any possibility of a fair trial." [10]

*Allen* involved a due process challenge to another subsection of Evidence Rule 404—subsection (a)(2), which authorizes a court to admit evidence of the defendant's character for violence to rebut a claim that the victim was the first aggressor.[11] We held that, because trial judges retain the authority under Evidence Rule 403 to exclude evidence that is more prejudicial than probative, Evidence Rule 404(a)(2) did not violate the guarantee of due process.[12] We reach the same conclusion regarding Evidence Rule 404(b)(4).

---

**6.** See *Post v. State*, 580 P.2d 304, 308 (Alaska 1978).

**7.** A.R.E. 403 provides: ,
 Although relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

**8.** 945 P.2d 1233 (Alaska App.1997).

**9.** *See id.* at 1238.

**10.** *Id.*

**11.** *See id.* at 1237.

**12.** *See id.* at 1239.

■ Fuzzard also argues that any rule that authorizes the admission of evidence of a defendant's other crimes violates a defendant's right not to be held to answer for a crime unless it is charged by indictment or information.[13] But Fuzzard was not "held to answer" for the other crimes or potential crimes mentioned at his trial. He faced no punishment for any crime other than the one named in the indictment—the current charge of third-degree assault. Just as the evidentiary use of a defendant's prior crimes does not violate the double jeopardy clause,[14] neither does the use of such evidence violate a defendant's right to formal notice of the charges against him.

■ Before admitting evidence of prior acts of domestic violence under this rule, trial courts must apply Evidence Rule 403, excluding the evidence if its probative value is outweighed by its potential for unfair prejudice.[15] Because courts are required under Rule 403 to exclude prior acts evidence that is more prejudicial than probative, Rule 404(b)(4) has adequate safeguards to survive a facial due process challenge. Moreover, in this case, admission of Fuzzard's prior misconduct did not place him at unreasonable risk of conviction based on his earlier acts. The prior acts were not inflammatory, and Fuzzard had ample opportunity to impeach Murphy's testimony on the prior misconduct and the charged offense. Finally, the acts were admitted for the very purpose advanced by the legislature: to resolve the difficult proof problems posed by conflicting accounts of domestic violence. For these reasons, Rule 404(b)(4) does not violate due process on its face or as applied. Although evidence of other acts of domestic violence does show propensity in a domestic violence prosecution, under Rule 404(b)(4) the evidence's ten-dency in this regard can no longer be deemed unfair prejudice.[16]

Fuzzard next argues that Evidence Rule 404(b)(4) violates equal protection because it is over-inclusive, creating a "vast" class of defendants against whom prior bad acts evidence is presumptively admissible, without requiring that the evidence serve the legislature's purpose of corroborating the testimony of complaining witnesses caught in an unreported and escalating pattern of domestic violence. The State responds that Fuzzard's equal protection claim fails because he has not shown that Rule 404(b)(4) seriously infringes on a constitutional right.

In *Lowell v. State*,[17] our supreme court rejected an equal protection claim based on a classification created by the rules of evidence. The court explained:

> Evidentiary rules by their very nature employ criteria and conditions which render evidence admissible against some defendants but not others. But states are free to employ such rules as long as they do not seriously encroach upon basic constitutional rights.[18]

*Lowell* addressed a claim that former Criminal Rule 26(f), which permitted the use of prior convictions to impeach a defendant or witness, created an under-inclusive classification.[19] That is, Lowell claimed that the rule violated the equal protection rights of defendants with criminal records because it made them more reluctant to take the witness stand than defendants without records.[20] Fuzzard is not arguing that he was denied equal protection because defendants convicted of other crimes are not similarly exempted from the ban against propensity evidence. Rather, he is arguing that Rule 404(b)(4)'s means-to-ends fit fails constitutional scrutiny.

---

13. *See* Alaska Const., art. I, § 8.

14. *See United States v. Watts*, 519 U.S. 148, 117 S.Ct. 633, 136 L.Ed.2d 554 (1997); *Dowling v. United States*, 493 U.S. 342, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990).

15. *See State v. Bingaman*, 991 P.2d 227, 230 (Alaska App.1999) (noting that a trial judge is under a duty to exclude evidence offered under Rule 404(b)(4) if its probative value is outweighed by the danger of unfair prejudice under Rule 403).

16. *Cf. Wardlow v. State*, 2 P.3d 1238, 1248 (Alaska App.2000) (holding that tendency of evidence of prior sexual assaults admitted under Evidence Rule 404(b)(3) to prove propensity is not "unfair prejudice" under Evidence Rule 403).

17. 574 P.2d 1281 (Alaska 1978).

18. *Id.* at 1283 (citing *Spencer v. Texas*, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed.2d 606 (1967)).

19. *See* 574 P.2d at 1284–85.

20. *See id.* at 1283.

Although evidence rules can distinguish between different classes of defendants without running afoul of equal protection, these distinctions cannot be arbitrary.

█ In *Allam v. State*,[21] this court described the steps this court must follow in analyzing an equal protection claim under Alaska law. First, this court must weigh the individual interest impaired by the statute against the government's interest in enacting the statute. Second, if the government's interest is sufficiently strong,

> this court must examine the connection between the social policies underlying the statute and the means adopted in the statute to further those policies. Again, depending upon the importance of the individual interest affected, this nexus between ends and means must fall somewhere on a continuum between "substantial relationship" and "least restrictive alternative." [22]

Fuzzard has failed to show that Evidence Rule 404(b)(4) infringes on a fundamental right. And he does not dispute that the government has a strong interest in addressing the proof problems posed by domestic violence: abuse that is often repeated, unreported and unwitnessed. Fuzzard's primary argument is that there is an inadequate nexus between the legislative purposes of Rule 404(b)(4) and the means adopted to further those purposes. More specifically, he argues that the rule casts too broad a net, presumptively admitting prior criminal acts that have no relevance to the paradigm of domestic violence. He argues that the legislature should have conditioned admissibility on the requirement of factual similarity to ensure that only relevant evidence is admitted. For example, Rule 404(b)(2) [23] has such a similarity requirement.

Although the legislature could have imposed additional conditions on the admissibility of prior acts of domestic violence—for example, it could have adopted California's approach, and limited admission to prior acts of assault [24]—there is a "substantial relationship" between the means chosen by the legislature and the ends sought to be achieved. Evidence Rule 404(b)(4) defines domestic violence broadly because it takes many forms.[25] This case illustrates that point: Murphy testified that Fuzzard broke into her home, interfered with her efforts to notify the police by pulling the phone from the wall, and, finally, threatened her with a gun. Limiting admissibility to narrower categories of abuse or relationships might defeat the goal of prosecuting perpetrators of domestic violence before the abuse escalates. We conclude that Fuzzard's argument that Rule 404(b)(4) exceeds the stated purpose of the legislation is without merit. Accordingly, even if Judge Pengilly erroneously admitted Fuzzard's prior or bad acts under Rule 404(b)(1), that error was harmless because the evidence is admissible under Rule 404(b)(4).

*Conclusion*

The judgment of the superior court is AFFIRMED.

---

**21.** 830 P.2d 435 (Alaska App.1992).

**22.** *Id.* at 439–40 (citing *State v. Enserch Alaska Const., Inc.*, 787 P.2d 624, 631–32, 632 n. 12 (Alaska 1989)).

**23.** A.R.E. 404(b)(2) provides:

> In a prosecution for a crime involving a physical or sexual assault or abuse of a minor, evidence of other acts by the defendant toward the same or another child is admissible if admission of the evidence is not precluded by another rule of evidence and if the prior offenses
> (i) occurred within the 10 years preceding the date of the offense charged;
> (ii) are similar to the offense charged; and
> (iii) were committed upon persons similar to the prosecuting witness.

**24.** *See* Cal.Evid.Code § 1109; Cal.Penal Code § 13700.

**25.** *See* AS 18.66.990(3).