**Donald E. HEAPS, Appellant,**

v.

**STATE of Alaska, Appellee.**

**Nos. A–7472, 4FA–98–3688 Cr.**

Court of Appeals of Alaska.

Aug. 17, 2001.

**110**

Marcia E. Holland, Assistant Public Defender, Fairbanks, and Barbara K. Brink, Public Defender, Anchorage, for Appellant.

W.H. Hawley, Jr., Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

*OPINION*

MANNHEIMER, Judge.

Donald E. Heaps and Debra Stevens lived together in Fairbanks. On August 22, 1998, Heaps and Stevens became embroiled in a violent argument. Based on Stevens's complaint to the police, Heaps was arrested and charged with misdemeanor assault.

Three months later, on November 18th, while Heaps was awaiting trial, he enticed Stevens to come to his home. When Stevens entered the house, Heaps slammed the door shut and announced, "[Since] I'm going to jail, I'm going to make it worth my while." Heaps then assaulted Stevens. He punched her in the head and face, breaking her nose. When Stevens broke free and ran from the house, Heaps grabbed her by the hair and pulled some of it out. He then hurled a large rock at Stevens; the rock fractured her right shoulder blade. Stevens jumped into her car and locked the doors. She was able to drive away, but not before Heaps pounded on the car and broke one of the windshield wipers.

Based on this incident, Heaps was charged with first-degree assault, fourth-degree assault, and interference with official proceed-

ings (retaliating against a witness).[1] Following a jury trial, Heaps was convicted of the two assault charges but acquitted of interference with official proceedings.

Heaps now appeals his assault convictions. Heaps contends that the trial judge improperly refused to allow him to introduce photographs that allegedly would have proved Stevens's propensity for violence. Heaps also contends that the trial judge improperly refused to instruct the jury regarding Heaps's potential justification for his original assault on Stevens in August 1998. In addition, Heaps argues that the trial judge committed plain error by failing to instruct the jury on potential lesser included offenses, even though Heaps's attorney did not ask for any such instructions. Finally, Heaps contends that the prosecutor engaged in improper argument during summation, thus prejudicing the fairness of his trial. For the reasons explained here, we reject each of Heaps's contentions and we therefore affirm his convictions.

*The trial judge's limitation on the testimony and photographic evidence that Heaps could introduce concerning a prior domestic disturbance*

At trial, Heaps asserted that Stevens had been the aggressor in their November 18th encounter. Heaps testified that Stevens attacked him in a jealous rage, kicking him in the groin and pulling his hair. Heaps conceded that he broke Stevens's nose, but he contended that he struck her only in self-defense. Heaps denied throwing a rock at Stevens; he suggested that her shoulder blade broke when she fell back against the door frame.

To corroborate this version of events, Heaps asked the court for permission to introduce evidence concerning an incident that occurred in April 1998. In that prior incident, Heaps and Stevens got into an argument, and then Heaps left Stevens alone at their house. While Heaps was gone, Stevens "trashed" the house: she carried his television outside, and she left the place in shambles. Heaps wished to testify about the April incident, and he also wanted to intro-

duce over a dozen photographs of what the house looked like after Stevens vented her anger. (These photos were taken by the state troopers when they came to investigate the disturbance.)

Superior Court Judge Ralph R. Beistline concluded that the April 1998 occurrence tended to bolster Heaps's claim of self defense with regard to the November incident for which he was being tried, and the judge therefore ruled that Heaps would be allowed to testify and introduce photographic evidence about the April incident. However, Judge Beistline limited Heaps's evidence on this issue.

With regard to Heaps's testimony about the April incident, Judge Beistline directed Heaps's attorney to confine his direct examination to a list of pre-approved leading questions. And from among the dozen offered photographs, Judge Beistline allowed Heaps to introduce two of these photographs (photos that depicted the television set sitting in the yard), but he declined to let Heaps introduce the others. The judge found that the probative value of the remaining photographs was outweighed by their potential for unfair prejudice and confusion of the issues; he therefore excluded the remaining photographs under Evidence Rule 403.

On appeal, Heaps challenges both aspects of Judge Beistline's ruling. Heaps contends that the judge abused his discretion when he limited the questions that Heaps's attorney could ask about the April incident. Heaps further contends that Judge Beistline abused his discretion when he excluded the other photographs. Having considered Heaps's arguments, we conclude that Judge Beistline did not abuse his discretion when he limited Heaps's testimony about this prior incident and when he limited the number of photographs that Heaps could put into evidence.

Because Heaps was charged with assaulting Stevens, and because he argued that his use of force had been justified by self-defense or defense of property, Heaps was entitled to introduce evidence concerning his knowledge of relevant traits of Stevens's

---

**1.** *See* AS 11.41.200(a), AS 11.41.230(a), and AS 11.56.510(a), respectively.

character.[2]  Here, Heaps argued that, based on the April 1998 incident, he knew Stevens to be an angry or violent person.

■ But even when evidence of a victim's character or past bad acts is relevant, a trial judge has the discretion to limit the amount of evidence introduced on this point, so long as the substance of the defendant's claim is communicated to the jury.[3]  When Judge Beistline .limited Heaps's testimony about the April 1998 incident, the judge acknowledged that the April incident was relevant, but the judge also declared that he did not want the testimony on this point to generate "subtrials within [the] trial".

Here, Heaps's offer of proof was that, in the aftermath of an argument between himself and Stevens in April 1998, Stevens threw things around the house and damaged some of Heaps's property (most notably, his television).  Judge Beistline allowed Heaps to communicate these facts to the jury.  Heaps was permitted to testify that, in the past, Stevens had damaged his property when she was angry with him.  Heaps then elaborated that, in April 1998, he had left Stevens alone in their house following an argument, only to return and find that the house was "all messed up" and that "[his] property was damaged", including his television.  At this point, Heaps's attorney introduced the two photographs of the damaged television.

Judge Beistline indicated that he would have viewed the matter differently (i.e., he would have given Heaps more latitude to introduce details of the incident) if Stevens had assaulted Heaps.  But Heaps alleged only that Stevens disrupted the house furnishings and damaged his personal property.  Despite Heaps's attempt to portray Stevens's actions as "an act of violence" and "an act of aggression", we believe that Judge Beistline did not abuse his discretion when he concluded that the relevance of Stevens's conduct could be adequately communicated by a general description of what she did, without ;"go[ing] into specifics".

■ And with regard to the several photographs that Judge Beistline refused to admit, we have examined them in light of Heaps's offer of proof.  Judge Beistline could reasonably conclude that these photographs added little of substance to Heaps's testimony, supplemented by the two photographs that were admitted.

We note that Heaps was allowed to introduce copious evidence of Stevens's propensities for aggression and irrationality.  In addition to his own testimony, Heaps called twenty-three witnesses to testify about his relationship with Stevens.  Many of these defense witnesses testified that Stevens was possessive, controlling, aggressive, and "nuts".

Under these circumstances, Judge Beistline did not abuse his discretion under Evidence Rule 403 when he limited Heaps's testimony concerning the April 1998 incident and when he allowed Heaps to introduce only two of the photographs.[4]  And because Judge Beistline did not abuse his discretion under Evidence Rule 403, his ruling did not deprive Heaps of his constitutional rights to confront the witnesses against him or to present evidence on his own behalf.[5]

*Heaps's requested jury instruction on the use of force to defend property*

■ Heaps was on trial for assaulting Stevens in November 1998, but this November assault was related to an incident that occurred three months earlier, in August 1998.  As explained above, the State contended that Heaps assaulted Stevens in November in retaliation for what happened in August—when Heaps was arrested and charged with misdemeanor assault following a domestic dispute with Stevens.

**2.**  *See* Alaska Evidence Rule 404(a)(2); *Allen v. State,* 945 P.2d 1233, 1240–41 (Alaska App.1997).

**3.**  *See Loesche v. State,* 620 P.2d 646, 651 (Alaska 1980).

**4.**  *See Hawley v. State,* 614 P.2d 1349, 1361 (Alaska 1980) (a trial judge's evidentiary rulings will not be reversed unless they constitute an abuse of discretion).

**5.**  *See Brown v. State,* 779 P.2d 801, 804–05 (Alaska App.1989) (holding that proper application of Evidence Rule 403 does not abridge a defendant's right of confrontation).

Toward the end of trial; when the parties and the trial judge were discussing jury instructions, Heaps's attorney asked Judge Beistline to give the following instruction to the jury:

You've heard evidence regarding an alleged assault in August, 1998. Although Heaps is not on trial for [this] assault, you should be aware that the following defense would be applicable:

A person may use non-deadly force upon another person when and to the extent he or she reasonably believes it necessary to terminate what is reasonably believed to be the commission or attempted commission by the other person of an unlawful taking or damaging of property or services.

Judge Beistline stated that he was not inclined to give this instruction because it appeared to be unnecessary. The judge pointed out that another instruction already told the jurors that Heaps was not on trial for the August incident, and the defense attorney conceded that it was "pretty clear" that the jurors were not to deliberate on that earlier charge. Nevertheless, the defense attorney urged Judge Beistline to give the proposed instruction because it offered the jury "a little more law [relating to] that allegation", and because "too much knowledge isn't a bad thing". Judge Beistline then reiterated his view that the proposed instruction was unnecessary—because another instruction already informed the jurors that Heaps was not being tried for the August incident.

Given the offer of proof made by the defense attorney, Judge Beistline could reasonably reject Heaps's proposed instruction. The defense attorney agreed with Judge Beistline that, for purposes of assessing Heaps's guilt or innocence of the November charges, it was irrelevant whether Heaps was guilty of assault in the August incident. The primary significance of the August incident was that Stevens had complained to the police and that, as a result, Heaps was arrested and charged with a crime. This, according to the State, prompted Heaps to retaliate against Stevens by assaulting her in November.

When Judge Beistline asked why it was necessary to instruct the jurors on a person's right to use force to defend their property, Heaps's attorney answered only that "too much knowledge isn't a bad thing". But under the circumstances, Judge Beistline could reasonably conclude that Heaps's proposed instruction would divert the jurors from their proper task (assessing Heaps's guilt or innocence of the November charges) by encouraging them to speculate about the answers to irrelevant questions (whether Heaps could lawfully be convicted of assault for the August incident, or whether Heaps's conduct in August might have been justified by a reasonable belief that Stevens was about to steal or damage his property).

On appeal, Heaps advances a different reason for giving the proposed instruction. He argues that the August incident was admissible, not only because it provided a potential motive for the November assault, but also because it potentially constituted another episode of domestic violence. As an earlier episode of domestic violence, the August incident was admissible under Evidence Rule 404(b)(4) to prove that Heaps was the aggressor in November. Heaps now argues that, because the jury might have viewed the August incident as evidence of Heaps's propensity to commit acts of domestic violence, the jury should have been informed of Heaps's potential legal justification for using force on Stevens in August—because, if Heaps's use of force in August was justified, then that use of force would not tend to prove his propensity to commit domestic assault.

This argument may have some merit, but this argument was not presented to Judge Beistline. Criminal Rule 30(a) requires a party who disagrees with a jury instruction to object before the jury retires to deliberate. Our supreme court, construing the sibling provision found in Civil Rule 51(a), has stated that "[t]he purpose of [the rule] is to enable the trial judge to avoid error by affording him [or her] an opportunity to correct [the] charge before it goes to the jury." [6]

**6.** *Estate of McCoy*, 844 P.2d 1131, 1134 (Alaska 1993) (quoting *Saxton v. Harris*, 395 P.2d 71, 73

The dictates of the rule are satisfied only if the judge is clearly made aware of the alleged error in or omission from the instructions. Counsel's objections must be specific enough to clearly bring into focus the precise nature of the asserted error.

*Estate of McCoy*, 844 P.2d at 1134.

■ If a litigant fails to make a specific and timely objection to a jury instruction or the failure to give a jury instruction, an appellate court's consideration of the asserted error is limited to plain error review.[7] In this appeal, Heaps has presented a new rationale for his requested instruction. Because Heaps failed to present this rationale to Judge Beistline, Heaps must now show that it was plain error for Judge Beistline not to give the requested instruction. In the context of jury instructions, plain error will be found only when the erroneous instruction (or the lack of an instruction) "creates a high likelihood that the jury followed an erroneous theory[,] resulting in a miscarriage of justice." [8]

We have reviewed the evidence at trial and the parties' arguments to the jury. The State's case was based primarily on Stevens's testimony and the physical evidence (most notably, her injuries) that corroborated her version of events. The prosecutor's summation focused on these factors. It is true that, at two points in her summation, the prosecutor spoke of the August 1998 assault as being part of the pattern of Heaps's and Stevens's domestic relationship. But the prosecutor's primary argument, both in opening and rebuttal, was that the physical evidence showed that Stevens was telling the truth and Heaps was lying about what happened on November 18, 1998.

Given this record, we conclude that Judge Beistline did not commit plain error when he failed to perceive, *sua sponte*, that Heaps's proposed instruction might be relevant under the rationale that Heaps advances on appeal—a rationale that differs from the one that Heaps's trial attorney offered.

*Judge Beistline's failure to instruct the jury sua sponte regarding potential lesser included offenses*

■ The two felony charges against Heaps were interference with official proceedings and first-degree assault. Throughout the trial, Judge Beistline repeatedly asked Heaps's attorney if he intended to propose any jury instructions—in particular, any jury instructions on lesser included offenses. On the morning of the fourth day of trial, the defense attorney told Judge Beistline that Heaps would request a self-defense instruction, but that Heaps would probably not request jury instructions on lesser included offenses. Heaps eventually requested three instructions (including a self-defense instruction and the defense-of-property instruction discussed in the previous section of this opinion), but Heaps never asked Judge Beistline to instruct the jury on potential lesser included offenses.

Now, on appeal, Heaps contends that Judge Beistline committed plain error by failing to instruct the jury, *sua sponte*, on the lesser offenses of second-, third-, and fourth-degree assault, as well as the offense of first-degree assault under a recklessness theory.[9] Heaps relies on Criminal Rule 30(b), which states that the trial court "shall instruct the jury on all matters of law which it considers necessary for the jury's information in giving their verdict." According to Heaps, this rule requires trial judges to instruct the jury on all potential lesser included offenses revealed by the evidence, even though neither party asks for jury instructions on these lesser included offenses.

Because Heaps's trial attorney did not ask Judge Beistline to instruct the jury on lesser included offenses, Heaps must show that the judge's failure to instruct the jury on these offenses constituted plain error—an error

(Alaska 1964)).

7. *See Estate of McCoy*, 844 P.2d at 1134; *Haskins v. Shelden*, 558 P.2d 487, 492 (Alaska 1976); *Colgan v. State*, 711 P.2d 533, 534 (Alaska App. 1985).

8. *Estate of McCoy*, 844 P.2d at 1134 (quoting *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 91 (Alaska 1974)).

9. *See* AS 11.41.200(a)(1).

that would have been obvious to any competent judge or lawyer.[10] Thus, to prevail in this appeal, Heaps must demonstrate that any competent judge would have concluded that jurors must be instructed on all potential lesser included offenses revealed by the evidence even though neither party asks for such instructions.

Prior Alaska decisions have construed Rule 30(b) to require a trial judge to instruct the jury on a lesser included offense when the lesser offense is supported by the evidence and either the defendant or the State asks for the instruction.[11] But no Alaska case has held that Rule 30(b) obliges a trial judge to instruct the jury on all potential lesser included offenses, regardless of the parties' wishes.

Our fellow states take differing positions on this issue. Heaps cites decisions from two states (California[12] and Illinois[13]) which require trial judges to instruct juries on all lesser included offenses revealed by the evidence. But the majority rule is otherwise. In most states, trial judges need not instruct juries on lesser included offenses unless one or both of the parties request it:

> Even when the evidence clearly supports a lesser-included offense ..., in most jurisdictions a judge does not commit error in failing to charge [the jury on the lesser offense] where no request is made for [this] charge. This position has been justified on the grounds that the parties should be permitted to control the course of the proceedings.

Wayne R. LaFave, Jerold H. Israel, and Nancy J. King, *Criminal Procedure* (2nd ed.1999), § 24.8(f), Vol. 5, p. 591.

The history of Alaska's Criminal Rule 30(b) suggests that the Alaska Supreme Court would favor the majority rule. Prior to December 15, 1975, Criminal Rule 30(b) directed trial judges to give three specified instructions in all criminal cases: (1) that a witness willfully false in one part of their testimony might be distrusted in other parts; (2) that the testimony of an accomplice should be viewed with distrust; and (3) that the government is obliged to prove the defendant's guilt beyond a reasonable doubt.[14] But in December 1975, the supreme court amended the rule to its current form, changing the rule so that it no longer required trial judges to give any particular jury instructions. The supreme court explained its action in *Alexander v. State*[15]:

> The mandatory nature of the [rule] was eliminated after our decision in *Anthony v. State*, 521 P.2d 486 (Alaska 1974), in which we reluctantly reversed a conviction due to failure to give [one of the three required] instruction[s], even though the omission was not called to the attention of the trial court. The obvious reason for the change in the rule was ... to prevent defendants from possibly seeking to take advantage of a [trial] court's oversight whereby the defendant could hope for a not-guilty verdict and be assured that error was present if the jury returned a guilty verdict.

*Alexander*, 611 P.2d at 483.

Were we to construe Criminal Rule 30(b) as Heaps suggests—*i.e.*, if we held that trial judges must instruct juries on all lesser included offenses revealed by the evidence, even when neither party requests it—then Rule 30(b) could again be used by enterprising defense counsel in the manner that the supreme court condemned in *Alexander*. Under Alaska's cognate approach to lesser included offenses, the range of lesser includ-

---

10.  See *Massey v. State*, 771 P.2d 448, 453 (Alaska App.1989); *Carman v. State*, 658 P.2d 131, 137 (Alaska App.1983); *Marrone v. State*, 653 P.2d 672, 675–681 (Alaska App.1982).

11.  See *Bendle v. State*, 583 P.2d 840, 843 (Alaska 1978) (defense request); *Blackhurst v. State*, 721 P.2d 645, 649–650 (Alaska App.1986) (prosecution request).

12.  *People v. Coddington*, 23 Cal.4th 529, 97 Cal. Rptr.2d 528, 2 P.3d 1081, 1133 (2000). The *Coddington* holding is based on the California

Supreme Court's earlier decision in *People v. Breverman*, 19 Cal.4th 142, 77 Cal.Rptr.2d 870, 960 P.2d 1094, 1100–01 (1998).

13.  *People v. Garcia*, 188 Ill.2d 265, 242 Ill.Dec. 295, 721 N.E.2d 574, 578–580 (1999).

14.  The complete text of the former version of Rule 30(b) is quoted in *Thessen v. State*, 454 P.2d 341, 349 n. 18 (Alaska 1969).

15.  611 P.2d 469 (Alaska 1980).

ed offenses is often not known until the defense presents its case. Even after all the evidence is in, attorneys and judges might reasonably debate whether an instruction on a particular lesser offense was justified by the evidence. Thus, a defense attorney might knowingly refrain from alerting the trial judge to a particular lesser included offense, motivated by the desire to sow the seed of error in the event that the jury's verdict was unfavorable. Or, even in cases where the judge instructed the jury on all the potential lesser included offenses that the judge and the trial attorneys could think of, an enterprising appellate counsel might scour the record for evidence that would have justified yet another lesser included offense, and thus obtain a new trial.

In addition to these considerations, we also note that Heaps's suggested construction of Rule 30(b) would constitute a substantial change in the judge's role at trial. Under Heaps's version of Rule 30(b), a trial judge would be obliged to inject new elements into the litigation of a criminal case even though the parties themselves do not wish to address these elements. As former Supreme Court Justice Robert C. Erwin noted in his dissent in *Bakken v. State*[16], one might classify jury instructions into two groups:

> (1) those basic to every criminal trial, namely, the elements of the crime charged and the concepts involved in due process, such as burden of proof and the presumption of innocence; and (2) those concerning the evidence adduced and the procedures followed in the particular trial. The former instructions are fundamental, basic charges, the omission of which is plain error absent an intelligent waiver. In the latter, however, we deal with trial counsel's conduct of the case, the elements or evidence he wishes to stress and those he wishes to subordinate; fundamental fairness is ordinarily not involved.

*Bakken*, 489 P.2d at 129 (Erwin, J., dissenting).

Heaps's suggested construction of Rule 30(b) would oblige a trial judge to offer alternative verdicts to the jury, thus altering the parties' litigation strategies. *LaFave* notes that most courts have rejected mandatory instructions on lesser included offenses because they believe that "the parties should be permitted to control the course of the proceedings." [17]

Alaska decisions on this issue—most notably, *McGee v. State*[18], *Gilbreath v. Anchorage*[19], *Jackson v. State*[20], and *Laraby v. State*[21]—reflect the view that the attorneys should decide how a case is litigated. These cases could be read as rejecting the view of the law that Heaps proposes here. But because Heaps is obliged to show plain error, we need not definitely resolve this question now. It is enough to point out that the states differ in their resolution of this issue (with the majority rejecting Heaps's view of the law), and that the history of Rule 30(b) demonstrates that our supreme court disfavors mandatory jury instructions. Thus, reasonable judges could differ regarding a trial judge's duty to instruct the jury on lesser included offenses in the absence of a request from either party. Because this is so, Heaps has failed to show plain error.[22]

### The prosecutor's summation

■■ Heaps contends that the prosecutor engaged in improper argument during her summation to the jury.

Heaps complains that the prosecutor suggested to the jury that the defense strategy at trial had been to attack Debra Stevens's character so that the jurors might be convinced that Stevens was "not worthy of the protection of the laws". The prosecutor told the jurors that "[t]rashing the victim is a

---

**16.** 489 P.2d 120 (Alaska 1971).

**17.** LaFave, Israel, and King, *Criminal Procedure* (2nd ed.1999), § 24.8(f), Vol. 5, p. 591.

**18.** 614 P.2d 800, 803 (Alaska 1980).

**19.** 773 P.2d 218, 223 (Alaska App.1989).

**20.** 750 P.2d 821, 826–27 (Alaska App.1988).

**21.** 710 P.2d 427, 428–29 n. 3 (Alaska App.1985).

**22.** *See Marrone v. State*, 653 P.2d 672, 676 (Alaska App.1982) (a claim of plain error fails if reasonable judges could differ as to what the law requires).

defense strategy, a tactic to make you not care about her, to make you think [that] she does not deserve the protection of the laws like everyone else."

Heaps contends that the prosecutor's statements constituted an improper expression of "personal belief" in Heaps's guilt, as well as an appeal "calculated to inflame ... the prejudices of the jury" and an argument "based on issues other than [Heaps's] guilt or innocence". We do not agree. As explained earlier, Heaps contended that he had acted in self-defense after Stevens attacked him in a fit of jealousy. To support this defense, Heaps presented several witnesses who testified that Stevens was possessive, controlling, aggressive, and irrational. The prosecutor's statements were a fair comment on the defense litigation strategy.

Heaps also challenges another of the prosecutor's remarks. During rebuttal, the prosecutor told the jurors that Stevens had testified against Heaps in order to be "vindicated", and that Stevens was asking the jury "to find that neither she nor anyone else deserves to be battered the way that she was on November 18, 1998."

Heaps suggests that the prosecutor's remark could be interpreted as an expression of the prosecutor's personal belief in Heaps's guilt, and as a request that the jurors convict Heaps in order to vindicate battered women in general. But it does not appear that Heaps's trial attorney interpreted the prosecutor's comment in that light, for the defense attorney made no objection. In any case, because there was no objection to the prosecutor's comments, Heaps must show plain error.

Examining the prosecutor's words closely, we conclude that the prosecutor did not assert a personal belief concerning the facts of the case, nor did the prosecutor ask the jurors to convict Heaps in order to solve the larger social problem of domestic violence. Rather, the prosecutor stated that *Stevens's motive* in pursuing the case was to obtain personal vindication and to have the jury enforce the law against people who commit domestic violence.

A prosecutor can properly comment on the potential motives of witnesses (so long as these comments are based on the evidence). Here, the prosecutor did not argue that Heaps should be convicted in order to deter other people from committing domestic violence, nor did the prosecutor argue that Heaps should be convicted to ensure Stevens's future safety. Rather, the prosecutor's remarks were consistent with the jury's duty to assess Heaps's guilt or innocence based on the evidence presented at trial.

Moreover, the challenged remarks constitute only a few moments of the prosecutor's lengthy summation. Even if the challenged remarks were conceivably objectionable, our duty is to evaluate the likely effect of those remarks when they are viewed in the context of the prosecutor's entire summation.[23] As we have already explained, the prosecutor's summation focused primarily on Stevens's testimony and why the physical evidence corroborated her version of events. Having examined the record as a whole, we do not find any likelihood that the challenged remarks affected the jury's verdict. Heaps has therefore failed to prove that these remarks constituted plain error.[24]

*Conclusion*

The judgement of the superior court is AFFIRMED.

**23.** *See Darling v. State,* 520 P.2d 793, 794–95 (Alaska 1974); *Tuckfield v. State,* 805 P.2d 982, 987 (Alaska App.1991); *Patterson v. State,* 747 P.2d 535, 541 (Alaska App.1987).

**24.** *See Tuckfield,* 805 P.2d at 987 (Alaska App. 1991) (citing *Love v. State,* 457 P.2d 622 (Alaska 1969)).