Frank MOONEY, Appellant,

v.

STATE of Alaska, Appellee.

No. A–8383.

Court of Appeals of Alaska.

Jan. 7, 2005.

Loren K. Stanton, Ketchikan, for Appellant.

Kenneth J. Diemer, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Gregg D. Renkes, Attorney General, Juneau, for Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and STEWART, Judges.

## OPINION

COATS, Chief Judge.

Frank Mooney appeals his conviction and sentence for sexual assault in the first degree. In his main point on appeal, Mooney argues that Superior Court Judge Michael A. Thompson erred in denying as untimely Mooney's challenge under *Batson v. Kentucky* to the prosecutor's use of peremptory challenges which excluded Alaska Natives from the jury. We hold that Mooney's *Batson* challenge was untimely because Mooney made the motion after Judge Thompson had sworn the jury and dismissed the jury venire. We also reject Mooney's other challenges to his conviction and uphold his sentence.

### Procedural and factual background

During the early morning hours of September 11, 2001, Ketchikan Police Officer Joseph White responded to a 911 call reporting that a man was chasing a half-nude woman down the road. Officer White arrived at the scene and saw a man pinning a woman to the ground. The man, later identified as Frank Mooney, was lying across the woman diagonally with his arm across her throat. Mooney was wearing only pants, and the woman, later identified as S.M., was naked except for a fleece jacket. Officer White ordered Mooney to get off of S.M. Then, with the help of Officer Josh Dossett, he restrained Mooney. He described S.M. as "very upset."

Officer Andrea Jacobson interviewed S.M. in a patrol car. S.M. told Officer Jacobson that she had initially agreed to perform oral sex on Mooney. However, at some point Mooney had "gotten rough" with her. S.M.

said she told Mooney that she wanted to stop performing oral sex and leave his house. At this point Mooney hit her in the back of the head twice with both fists. Mooney also told S.M. that she could not leave unless she finished performing oral sex on him, and that if she did not he would "fuck her in the ass" and that she would not leave his residence alive. S.M. said she continued to do as Mooney said while he continued to threaten her. At one point she said she had to go to the bathroom. When Mooney let her go, S.M. ran for the door and fled down the street, wearing only the fleece jacket.

Mooney told Officers White and Dossett that he was only chasing S.M. because she had assaulted him and stolen $600 from him. Mooney stated that he and S.M. went to his apartment where they both undressed and S.M. voluntarily performed oral sex on him. Mooney denied that he had threatened S.M. or forced her to do anything. However, Mooney did agree that S.M. stopped performing oral sex on him before he was finished. She then got up and entered the bathroom. Mooney claimed that when S.M. left to go to the bathroom she was "acting a little weird." Mooney then noticed that he could not see his wallet. When he asked S.M. where it was, she "just bolted out the door." Mooney said he followed S.M., caught her arm, and pulled her down to the ground and restrained her. Then the police arrived.

The State indicted Mooney on one count of sexual assault in the first degree. Following a trial conducted by Judge Thompson, the jury convicted Mooney. Judge Thompson sentenced Mooney, a third felony offender for purposes of presumptive sentencing, to 30 years' imprisonment with 5 years suspended. This appeal follows.

### Mooney's Batson objection was untimely

In *Batson v. Kentucky*, the United States Supreme Court held that a prosecutor could not exercise peremptory challenges based upon racial bias.[1] In the years since it decided *Batson*, the court has repeatedly expand-

---

1. 476 U.S. 79, 84, 106 S.Ct. 1712, 1716, 90 L.Ed.2d 69 (1986).

ed its scope.[2]

In *Batson*, the Supreme Court held that in order to raise an objection to a peremptory challenge, the challenge had to be exercised in a timely manner. But the Supreme Court has not specified when a party must make a challenge in order for it to be timely.[3] "Instead [the Supreme Court] recognized that local practices would indicate the proper deadlines ... and left it to the trial courts, with their wide 'variety of jury selection practices,' to implement *Batson* in the first instance."[4] But the Supreme Court stated that "a state court may adopt a general rule that a *Batson* claim is untimely if it is raised for the first time on appeal, or after the jury is sworn...."[5]

Alaska has not adopted any rule defining when a party must raise a *Batson* challenge. But courts in other jurisdictions have decided this issue. Many courts have held that, in order to preserve a *Batson* challenge, a party must make the challenge before the jury is sworn.[6] Other jurisdictions have held that a party must raise a *Batson* challenge not only before the jury is sworn, but also before the court dismisses the remaining jury venire.[7]

Thus, the overwhelming majority of courts that have considered this issue would find that Mooney's *Batson* challenge came too late, because Judge Thompson had already released the remaining members of the jury venire and had sworn the jury. We conclude that we should adopt the same policy as these other courts.

One primary reason for requiring a party to make a timely objection is to allow the court and the parties to litigate the issue while it is fresh in their minds. If a defendant waits until the middle of trial to raise a *Batson* objection to the prosecutor's peremptory challenges, the prosecutor may have forgotten the precise reasons for challenging particular jurors. Furthermore, the trial judge (who must assess the prosecutor's explanation for the challenges) may no longer remember the prospective jurors, their answers to the various questions during voir dire, and their behavior and mannerisms during the selection process.

■ Another primary reason for requiring a party to make a timely objection is to make sure that the trial court has a reasonable opportunity to fashion a remedy if the party's objection is well-founded. In a jury trial,

**2.** *See Powers v. Ohio*, 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991) (prohibiting the prosecution from exercising a racially motivated challenge whether or not the person challenged was the same race as the defendant); *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992) (prohibiting criminal defendants from exercising peremptory challenges to exclude jurors based on race); *Edmonson v. Leesville Concrete Co.*, 500 U.S. 614, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (extending *Batson* to private litigants in a civil case); *J.E.B. v. Alabama ex rel T.B.*, 511 U.S. 127, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994) (extending *Batson* to prohibit gender discrimination during jury selection).

**3.** *Ford v. Georgia*, 498 U.S. 411, 423, 111 S.Ct. 850, 857, 112 L.Ed.2d 935 (1991) (citing *Batson*, 476 U.S. at 99–100, 106 S.Ct. at 1724–25, 90 L.Ed.2d 69).

**4.** *Id.* (quoting *Batson*, 476 U.S. at 99 n. 24, 106 S.Ct. at 1725 n. 24).

**5.** *Id.*

**6.** *See, e.g., People v. Richardson*, 189 Ill.2d 401, 409, 245 Ill.Dec. 109, 115, 727 N.E.2d 362, 368 (2000); *Laney v. State*, 271 Ga. 194, 515 S.E.2d

610, 612 (1999); *State v. Robinson*, 237 Conn. 238, 676 A.2d 384, 386–87 (1996); *State v. Wilson*, 117 N.M. 11, 868 P.2d 656, 661 (App.1993); *U.S. v. Cashwell*, 950 F.2d 699, 704 (11th Cir. 1992); *Pacee v. State*, 306 Ark. 563, 816 S.W.2d 856, 859 (1991); *U.S. v. Dobynes*, 905 F.2d 1192, 1196 (8th Cir.1990) (*cert. denied* 498 U.S. 877, 111 S.Ct. 206, 112 L.Ed.2d 167); *People v. Evans*, 125 Ill.2d 50, 125 Ill.Dec. 790, 530 N.E.2d 1360, 1364 (1988); *Stanley v. State*, 313 Md. 50, 542 A.2d 1267, 1276 (1988); *Thomas v. State*, 517 So.2d 1285, 1287–88 (Miss.1987). *But see People v. Bolling*, 79 N.Y.2d 317, 582 N.Y.S.2d 950, 591 N.E.2d 1136, 1139 (1992) (holding that a *Batson* challenge can be raised "regardless of whether jury selection has been completed").

**7.** *See, e.g., State v. Ford*, 306 Mont. 517, 39 P.3d 108, 113 (2001); *Sorensen v. State*, 6 P.3d 657, 662 (Wyo.2000); *Morning v. Zapata Protein (USA), Inc.*, 128 F.3d 213, 216 (4th Cir.1997); *U.S. v. Abou–Kassem*, 78 F.3d 161, 167 (5th Cir. 1996); *State v. Cummings*, 838 S.W.2d 4, 6 (Mo. App.1992); *U.S. v. Biaggi*, 909 F.2d 662, 679 (2nd Cir.1990); *State v. Harris*, 157 Ariz. 35, 754 P.2d 1139, 1140 (1988); *Gov't of Virgin Islands v. Forte*, 806 F.2d 73, 76 (3rd Cir.1986).

jeopardy attaches when the jury is sworn.[8] Thus, if a defendant waits until after the jury is sworn to raise a *Batson* challenge to the prosecutor's exercise of peremptory challenges, and if there are insufficient alternate jurors to match the number of disputed peremptory challenges, the only available remedy will be a mistrial—a procedure that can cause considerable delay and expense, and which is burdensome to the parties, the victims and witnesses, and the court.

Moreover, even in cases where the jury has not been sworn, if the trial judge has already released the remaining members of the jury venire, a successful *Batson* challenge will require the court to summon additional prospective jurors. Again, this procedure can cause considerable delay, especially in locations or circumstances where an additional jury venire is not readily available.[9]

■ For these reasons, we align ourselves with the courts that require defendants to raise *Batson* challenges before the remaining members of the jury venire are released and the jury is sworn. And we accordingly hold that Mooney's *Batson* challenge was untimely. (Given the facts of Mooney's case, we need not decide whether a *Batson* challenge will be deemed untimely if it is made after the remaining members of the jury venire are released but *before* the jury is sworn.)

*Judge Thompson did not err in admitting evidence of Mooney's prior conviction for sexual assault*

■ Mooney argues that Judge Thompson erred in allowing the State to introduce evidence of his prior conviction for sexual assault. Mooney had a prior conviction in 1981 for first-degree rape in the State of Washington. The State contended that the evidence of this prior conviction was admissible under Evidence Rule 404(b)(3). Evidence Rule 404(b)(3) provides that, in a prosecution for sexual assault (or attempted sexual assault)

in any degree, evidence of prior sexual assaults or attempted sexual assaults by the defendant is admissible if the defendant relies on the defense of consent. This rule provides an exception to Evidence Rule 404(b)(1)'s ban on evidence offered for the sole purpose of showing the defendant's propensity to commit crimes.[10]

■ Mooney defended on the ground that S.M. consented to the sexual activity. Judge Thompson therefore considered whether Mooney's prior conviction was admissible under Evidence Rule 404(b)(3). The facts of Mr. Mooney's prior conviction were read into the record and are as follows:[11] A woman voluntarily got into Mooney's van in downtown Seattle. Mooney assaulted and threatened her, pointed a gun at her and forced her to perform oral sex on him. Mooney attempted to tie the victim up with her pantyhose, but she tried to escape. He then grabbed her by the hair and hit her in the face with the gun. The victim then escaped from the van and Mooney shot at her as she ran away. Mooney attempted to flee and ran his van into a wall.

Judge Thompson found that Mooney's prior conviction was "remarkably similar" to the present case. Judge Thompson considered the age of Mooney's prior conviction. He also considered Mooney's age when he committed the prior offense. But he concluded that because Mooney had been in his twenties at the time of the prior offense, he was not a youthful offender. He concluded that the prior conviction was sufficiently similar, even when he considered the passage of time, to be relevant to Mooney's propensity to commit sexual assaults.

■ Mooney argues that Judge Thompson abused his discretion in admitting this evidence. He first contends that Evidence Rule 404(b)(3) violates due process by authorizing the admissibility of evidence of a defendant's

---

**8.** *See March v. State,* 859 P.2d 714, 717 (Alaska App.1993).

**9.** *See Ford,* 39 P.3d at 112.

**10.** *Wardlow v. State,* 2 P.3d 1238, 1246 (Alaska App.2000).

**11.** The prosecutor was prevented from presenting the specific facts of the prior conviction to the jury—they were only made aware of the fact that a prior conviction existed.

propensity to commit sexual assaults. But we have previously rejected this due process claim.[12] We held that the admission of propensity evidence did not "per se violate due process."[13] We emphasized that, even though propensity evidence might be relevant under the evidence rules, the trial judge still had a duty to apply Evidence Rule 403 to weigh the probative force of the evidence against its potential for unfair prejudice. A trial judge's stringent application of Evidence Rule 403 protects the defendant's due process rights.[14]

Mooney argues that Judge Thompson did not perform the required balancing under Evidence Rule 403. But the record shows otherwise. Judge Thompson weighed the probative value of the evidence against the danger of unfair prejudice. He ultimately concluded that the evidence of Mooney's prior sexual assault conviction was admissible because the facts in the case were similar to the facts of the current charges against Mooney. Although he considered the age of the conviction, he concluded that the evidence was probative because Mooney was an adult at the time he committed the offense. We conclude that Judge Thompson's findings are supported by the record and conclude that he did not abuse his discretion in admitting Mooney's prior sexual assault conviction.

*Judge Thompson did not err in prohibiting Mooney from introducing evidence of specific prior bad acts by S.M.*

■ Mooney argues that Judge Thompson erred in refusing to allow him to elicit testimony from Gwen Hellickson that she had seen S.M. steal tip money from tables in the bar where Hellickson worked as a bartender. This issue is governed by Evidence Rule 608. Evidence Rule 608 provides that "[t]he credibility of a witness may be attacked ... by evidence in the form of opinion or reputa-

tion."[15] The evidence so admitted is subject to two limitations: (1) it may "refer only to character for truthfulness or untruthfulness," and (2) evidence of *specific instances* of such conduct is inadmissible.[16] Earlier in the trial, Mooney introduced, through the testimony of David Rosendin, that S.M. had a "reputation for stealing things." This evidence was properly admissible under Evidence Rule 608. But when Mooney sought to have his next witness, Hellickson, testify to specific instances where S.M. stole tip money, Judge Thompson properly ruled that this testimony was inadmissible because it violated Rule 608's prohibition against introducing evidence of specific instances of bad conduct. We accordingly affirm Judge Thompson's ruling excluding this portion of Hellickson's testimony.

*Judge Thompson did not err in failing to give an instruction requiring the jury to find that Mooney had engaged in a "voluntary act"*

■ Mooney argues that it was plain error for Judge Thompson to fail to instruct the jury on the requirement that it had to find that he engaged in a voluntary act in order to convict him. But this court will find plain error only where the error "creates a high likelihood that the jury followed an erroneous theory resulting in a miscarriage of justice."[17]

As stated in AS 11.81.600(a), a person can not be held criminally liable unless that person has performed a voluntary act (or has failed to perform an act that the person was capable of performing). The term "voluntary act" is defined in AS 11.81.900(b)(62) as follows: "a bodily movement performed consciously as a result of effort and determination." In other words, a voluntary act is a willed movement in the broadest sense of that term.[18]

12. *Wardlow*, 2 P.3d at 1248; *McGill v. State*, 18 P.3d 77, 81 (Alaska App.2001).

13. *McGill*, 18 P.3d at 81 (quoting *Allen v. State*, 945 P.2d 1233, 1238 (Alaska App.1997)).

14. *Allen*, 945 P.2d at 1239.

15. Alaska Rule of Evidence 608(a).

16. Evidence Rule 608(a) & (b) (emphasis supplied).

17. *Holiday Inns of America, Inc. v. Peck*, 520 P.2d 87, 91 (Alaska 1974).

18. *See* Rollin M. Perkins & Ronald N. Boyce, *Criminal Law* (3rd edition 1982), pp. 837–38.

Ordinarily, no special instruction is needed concerning the requirement of a voluntary act because this issue is not disputed. The recognized exceptions to a "voluntary act" are (1) reflexive or convulsive movements, (2) movements during sleep or unconsciousness, and perhaps (3) movements during hypnosis.[19] Very few criminal cases are defended on such bases.

■ Nevertheless, Mooney contends that Judge Thompson's failure to give his jury an instruction on the concept of "voluntary act" was plain error. That is, Mooney argues that even though his trial attorney failed to request such an instruction, any competent judge would have seen the need for such an instruction and would have acted, *sua sponte*, to instruct the jury on this issue.

Mooney argues that the facts of his case raise a distinct possibility that he committed no voluntary act. Mooney asserts that, when S.M. ceased fellating him before he reached orgasm, he responded with the "instinctive, visceral, knee-jerk reaction" of striking her in the head.

But there was no evidence to indicate that Mooney's act of striking S.M. was not a willed movement. Even accepting Mooney's explanation for the assault, his act of striking S.M. would not qualify as "involuntary" for legal purposes.

People sometimes speak figuratively of a "knee-jerk" reaction when they mean to describe a response made without reflection or deliberation. But for legal purposes, an act is "voluntary" unless it is a true reflexive reaction—*i.e.*, a muscular contraction that occurs spontaneously, without intervention of the conscious brain, when the body is subjected to stimulus.[20]

Mooney may have been incapable of resisting the impulse to strike S.M., but there is no indication that his act of striking her was not a willed movement for purposes of the criminal law. Thus, the fact that Judge Thompson did not, *sua sponte*, instruct the jury on the definition of "voluntary act" was not plain error.

*Judge Thompson did not commit plain error in failing to instruct the jury on the lesser-included offense of assault*

Mooney contends that Judge Thompson erred in failing to give the jury a lesser-included instruction on the offense of assault. But Mooney concedes that he did not request such an instruction, and he therefore must show plain error.

■ Although simple assault was a possible lesser-included offense in this case, Judge Thompson did not commit plain error in declining to give the instruction *sua sponte*. In *Heaps v. State* this court adopted the majority rule that a trial judge need not instruct a jury on a lesser-included offense unless one or both of the parties request it.[21] This is true "[e]ven when [as here] the evidence clearly supports a lesser-included offense." [22] Adhering to our decision in *Heaps*, we conclude that Judge Thompson did not commit plain error in failing to instruct the jury on the lesser-included offense of assault.

*The sentence which Judge Thompson imposed was not clearly mistaken*

Judge Thompson found that Mooney was a third-felony offender for purposes of presumptive sentencing. As a third-felony offender convicted of sexual assault in the first degree, Mooney faced a presumptive term of 25 years of imprisonment.[23]

---

19. Wayne R. LaFave, Substantive Criminal Law (2nd ed.2003), § 6.1(c), Vol. 1, pp. 426–27.

20. *See Webster's New World Dictionary of American English* (Third College Edition, 1988), p. 1128: "**reflex—adj** .... **2** b) *physiol.* designating or of an involuntary action, [such] as a sneeze, resulting from a stimulus that is carried by an afferent nerve to a nerve center and the response that is reflected along an efferent nerve to some muscle or gland."

21. 30 P.3d 109, 115 (Alaska App.2001) (declining to find plain error where the trial court instructed on first-degree assault, but not on the lesser-included charges of second, third, and fourth-degree assault).

22. *Id.* (quoting LaFave, Criminal Procedure (2nd ed.1999), § 24.8(t), p. 591).

23. AS 12.55.125(i)(4).

Prior to sentencing, the State proposed four aggravating factors in Mooney's case: (1) that a person, other than an accomplice, sustained physical injury as a result of Mooney's actions,[24] (2) that Mooney's prior criminal history included conduct involving aggravated or repeated instances of assaultive behavior,[25] (3) that Mooney had three or more felony convictions,[26] and (4) that Mooney had engaged in the same or other conduct involving the same or another victim.[27] Judge Thompson found that all of these aggravating factors existed in this case.

Mooney proposed three mitigating factors, and Judge Thompson found that two applied. First, he found that Mooney's conduct was among the least serious within the definition of first-degree sexual assault.[28] Second, he found that Mooney had assisted authorities to detect, apprehend, and prosecute other persons who committed an offense.[29] Judge Thompson pointed out that Mooney had five prior felony convictions. He considered the fact that the prior felony convictions were old and some of them were arguably not egregious offenses. But he also considered the fact that Mooney had a history of committing assaults. Even though Judge Thompson found that Mooney's conduct in his present conviction was among the least serious conduct included in the definition of the offense, he pointed out that it was still a serious offense. He concluded that he should impose the presumptive sentence which the legislature established. He therefore imposed the sentence of thirty years with five years suspended.

 As a preliminary matter, although Mooney concedes that it was proper for Judge Thompson to consider his prior rape conviction from 1981, he argues that Judge Thompson should not have considered his earlier felony convictions. But we rejected an argument similar to Mooney's in *Gilley v. State.*[30] In *Gilley* we interpreted AS 12.55.145(a)(1)(A) to exclude a defendant's prior felony if the defendant's current offense was committed ten years or more after the defendant was discharged from his or her last felony sentence (including any period of probation or parole).[31] But if a defendant had been restricted because of a prior felony conviction within the ten-year period, the sentencing court was to consider all of the defendant's prior felony convictions for purposes of presumptive sentencing.[32] We conclude that Judge Thompson did not err in finding that Mooney was a third-felony offender for purposes of presumptive sentencing.

Mooney argues that his sentence was excessive. We have earlier set out Judge Thompson's reasons for imposing the sentence which he did. We conclude that Judge Thompson's findings support the sentence and conclude that the sentence which he imposed is not clearly mistaken.[33]

### Conclusion

We conclude that Mooney's claims of error have no merit and that Judge Thompson was not clearly mistaken in imposing Mooney's sentence. We accordingly AFFIRM the conviction and sentence.

AFFIRMED.

---

24. AS 12.55.155(c)(1).

25. AS 12.55.155(c)(8).

26. AS 12.55.155(c)(15).

27. AS 12.55.155(c)(18)(B).

28. AS 12.55.155(d)(9).

29. AS 12.55.155(d)(12).

30. 955 P.2d 927 (Alaska App.1998).

31. *Id.* at 928.

32. *Id.* at 930.

33. *McClain v. State,* 519 P.2d 811 (Alaska 1974).