Michael D. HOWARD, Appellant,

v.

STATE of Alaska, Appellee.

No. A–10312.

Court of Appeals of Alaska.

Sept. 24, 2010.

Serena Green and Sarah T. White, Assistant Public Defenders, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant.

Ann B. Black, Assistant Attorney General, Office of Special Prosecutions and Appeals, Anchorage, and Daniel S. Sullivan, Attorney General, Juneau, for the Appellee.

Before: COATS, Chief Judge, and MANNHEIMER and BOLGER, Judges.

## OPINION

MANNHEIMER, Judge.

Michael D. Howard appeals his conviction for fourth-degree assault.[1] Howard was convicted of this crime based on evidence that he kicked another man in the face and ribs. Howard's defense at trial was self-defense; he presented evidence that the purported victim of the assault actually initiated the violence.

The issue presented in this appeal is whether the trial judge acted properly when he allowed the State to rebut Howard's claim of self-defense by presenting evidence of Howard's character for violence, through the testimony of a local police officer.

■ Under Alaska Evidence Rule 404(a)(2), when a defendant who is on trial for a crime of violence offers evidence that the purported victim of the crime was the first aggressor (thus raising the issue of self-defense), the prosecution may rebut the claim of self-defense by offering evidence of

---

1. AS 11.41.230(a)(1), (3).

"a relevant character trait of [the] accused"—normally, the defendant's character for violence.

▇ When the prosecution offers evidence of the defendant's character for violence under Evidence Rule 404(a)(2), the prosecution is not allowed to prove the defendant's character by introducing evidence of specific acts of violence committed by the defendant. Rather, the prosecution is limited to either (1) testimony concerning the defendant's reputation within a relevant community or group in which the defendant habitually associates, or (2) testimony of witnesses who know the defendant and have an opinion concerning the defendant's character for violence. *See* Alaska Evidence Rule 405(a).

In the present case, the State presented the testimony of Craig Police Sergeant Robert Ely. Ely testified that he had known Howard for three years, since the time he began working as a police officer in Klawock and Craig. Ely stated that, in his opinion, Howard "can be a very aggressive individual".

▇ On appeal, Howard contends that the State failed to establish a sufficient evidentiary foundation for Sergeant Ely's testimony—*i.e.*, failed to present evidence that Ely knew enough about Howard to form an opinion concerning his character for violence. However, in the district court, Howard did not object to Ely's testimony on this basis, nor did Howard ever ask the trial judge for permission to *voir dire* Ely on this issue. This claim is therefore not preserved for appeal.

▇ Nor do we find plain error. When the parties were litigating the question of whether Ely would be allowed to testify, Howard's attorney told the district court that Ely had been the investigating officer in Howard's previous criminal cases. This fact would seemingly support an inference that Ely was sufficiently acquainted with Howard to offer an opinion on Howard's character for aggressiveness or violence.

Howard additionally contends that it was unfair to allow Ely to offer an opinion of Howard's character for violence because, if Howard's attorney wished to cross-examine

Ely concerning the basis for this opinion, the defense attorney would run the risk of eliciting testimony concerning Howard's past crimes of violence.

This may have been true, but it does not make Howard's situation unique. Any attorney (whether a prosecutor or defense attorney) would face the same dilemma when cross-examining any witness who (on direct examination) has offered an opinion concerning another person's character for violence. If the witness is cross-examined about the basis for their opinion, the witness is likely to offer testimony about their prior dealings with the person in question—*i.e.*, testimony concerning instances in which the person demonstrated aggression or violence. This would be true regardless of whether those prior acts of violence led to criminal convictions (or even criminal prosecutions), and it would be true regardless of whether the character witness was a police officer or a civilian.

▇ Howard next argues that even if Ely's testimony was admissible under Evidence Rule 404(a)(2), the trial judge nevertheless failed to adequately investigate whether Ely's testimony should have been excluded under Evidence Rule 403 (*i.e.*, on the ground that its potential for unfair prejudice outweighed its probative value). *See* Evidence Rule 404(a)(2)(ii). But the record shows that the trial judge did engage in this analysis.

When the prosecutor indicated (before trial) that Ely would be called to testify about Howard's character for violence, Howard's attorney urged the trial judge (District Court Judge David V. George) to exclude the proposed testimony—not because it was irrelevant, but because it would be unduly prejudicial. The defense attorney argued that, since Craig and Klawock comprised such a small community, it would be obvious to the jurors that Ely gained his knowledge of Howard's character for violence through prior police contacts.

Judge George recognized that the question before him was whether Ely's proposed testimony would be unfairly prejudicial. He noted that his task was "to identify [the] type of

evidence [that Ely was] going to [present], and put bounds on it."

In its initial offer of proof, the State proposed to have Ely testify that Howard was an "extremely violent person" when he used drugs or alcohol. But Judge George told the prosecutor that Ely would not be allowed to characterize Howard as "violent"; instead, the judge directed Ely to use the word "aggressive". Moreover, Judge George precluded Ely from testifying about Howard's use of drugs or abuse of alcohol because "that [would] inject[ ] a whole nother prejudicial [aspect] into this [trial]; ... folks don't love drugs here." Judge George also precluded Ely from testifying that he knew Howard through his work as a police officer.

In other words, the record thus shows that Judge George weighed Ely's proposed testimony under Evidence Rule 403: the judge considered the testimony's potential for unfair prejudice, and he took affirmative steps to limit that prejudice.

Howard argues, in one conclusory sentence, that the record fails to support Judge George's conclusion that Sergeant Ely's testimony (redacted in this manner) was more probative than prejudicial.

██ When we review a trial judge's weighing of probative value versus potential for unfair prejudice under Evidence Rule 403, we review the judge's ruling under the "abuse of discretion" standard. The "abuse of discretion" standard is employed because this is the type of ruling where there is no "right" answer, and where reasonable judges, confronted with the same facts, might come to differing conclusions. Accordingly, we are to affirm the trial judge's ruling unless it is clearly untenable or unreasonable. *Gonzales v. State*, 691 P.2d 285, 286 (Alaska App.1984).

██ Here, the record shows that Judge George engaged in a reasoned assessment of the proposed evidence. Howard has not established that Judge George abused his discretion.

Our conclusion that Judge George did not abuse his discretion in this case should not be read as a blanket approval of the State's calling police officers or other justice system officials to testify about the character of a defendant. Indeed, in *Hammer v. State*, Alaska App. Memorandum Opinion No. 4716 (June 4, 2003), 2003 WL 21279539, we reversed a conviction because the State presented the defendant's probation officer as a character witness.

In *Hammer*, we acknowledged that, because Hammer took the stand at his trial, "the State was undoubtedly entitled to attack Hammer's character for truthfulness by introducing reputation or opinion evidence under Rule 608(a)". *Id.* at *2. However, we concluded that "the fact that the State's character witness was Hammer's probation officer inherently created a substantial possibility of unfair prejudice" for two reasons: first, "[because] Hammer's probation status meant that he had committed prior crimes"; and second, because "any juror familiar with the criminal justice system in this state [would have realized that] the fact that Hammer had an assigned probation officer (and was not simply on unsupervised probation) meant that he had been convicted of a felony, not a misdemeanor." *Ibid.*

We further noted that "[t]he State made no effort to show that [Hammer's] probation officer was the only witness (or even the only reasonably available witness) who could give an opinion concerning Hammer's character for truthfulness." *Ibid.*

Based on these factors, we held that the trial judge abused his discretion under Alaska Evidence Rule 403 when he allowed the State to call Hammer's probation officer as a character witness. *Ibid.*

Returning to the facts of the present case, the State's decision to call a police officer as a character witness at Howard's trial obviously raised the same concerns that we addressed in *Hammer*. However, Howard's case is factually distinguishable from *Hammer*, in that the State's chosen witness was a police officer rather than a probation officer.

In *Hammer*, we concluded that the jurors must have inferred that Hammer had committed crimes in the past if he had a probation officer. But in Howard's case, the State's character witness was a small-town police officer—and, for that reason, it is not so obvious that jurors would draw the infer-

ence that Howard had committed past crimes.

First, because the cities of Craig and Klawock are relatively small, there was a reasonable possibility that Ely would be acquainted with Howard simply because they were residents of the same community, and not because Ely had come to know Howard through police business. As we have explained, Judge George took steps to heighten this inference when he precluded Ely from testifying that his knowledge of Howard arose from his work as a police officer.

Second, even if we assume that the jurors surmised that Ely's acquaintance with Howard stemmed from Ely's work as a police officer, it would not necessarily follow that Howard had a record of past criminal convictions, or even that Howard had been charged with breaking the law on past occasions. As the Missouri Supreme Court noted in *State v. Reilly*, 674 S.W.2d 530, 532–33 (Mo.1984), "It is well known that most police officers have a wide acquaintance among the citizenry in general[,] and the fact that a person is known to a police officer does not necessarily convey the impression that he has a criminal record."

While the Missouri court's observation might be questionable in cases arising in a large city, we believe that the observation has considerable force in cases arising in small communities, like Craig and Klawock, where police officers are summoned to deal with many situations that do not involve criminal acts, or that do not lead to criminal charges, and where officers frequently come into contact with citizens outside of their police duties.

Compare this Court's decision in *Cruz–Reyes v. State*, 74 P.3d 219, 225 (Alaska App.2003), where we found that even if the jurors recognized a witness as an Immigration and Naturalization officer, and even if the jurors surmised that the witness's acquaintance with the defendant stemmed from official INS business, it did not follow that the jurors would necessarily conclude that the official INS business involved misconduct on the part of defendant.

For these reasons, we conclude that Howard has failed to show that Judge George acted unreasonably when he concluded that, despite Ely's identity as a police officer, Ely's testimony was more probative than prejudicial under Evidence Rule 403.

■ Howard raises an additional argument: that Judge George should not have allowed Ely to testify while in uniform. Howard's attorney did raise this objection in the trial court, but we conclude that Judge George did not abuse his discretion when he overruled this objection.

Howard's attorney had already conceded (indeed, had affirmatively relied on) the fact that the jurors lived in the same small community with Ely and would therefore inevitably know that he was a police officer. Consequently, there is no reason to believe that the jurors would have evaluated Ely's testimony any differently if he had appeared in court wearing plain clothes.

Moreover, even though the prosecutor gave plenty of notice of the State's intention to have Sergeant Ely testify as a character witness, Howard's attorney did not raise the objection about Ely's wearing his police uniform until Ely actually appeared in court to give his testimony.

Given these circumstances, we find that Judge George did not abuse his discretion when he overruled Howard's objection.

Finally, Howard argues that Ely's testimony should have been excluded under Evidence Rule 404(b)(1), the rule that forbids evidence of a person's other crimes or bad acts if that evidence is offered to prove (1) that the person characteristically engages in such acts, and thus (2) is likely to have acted true to character during the episode currently being litigated.

Howard does not claim that Ely expressly referred to any of Howard's prior acts of violence. Moreover, as we noted before, Judge George did not allow Sergeant Ely to testify that he knew Howard through his work as a police officer. However, Howard again argues that it was implicit, from Ely's testimony, that Ely's knowledge of Howard

was gained through police business, and that Howard must therefore have engaged in previous criminal acts.

Howard did not raise this argument in the district court, so he must show plain error. For the reasons we have already explained, we conclude that the jurors would not necessarily have drawn the prejudicial inferences that Howard proposes. Thus, Howard has failed to show plain error.

*Conclusion*

The judgement of the district court is AFFIRMED.