NOTICE

*The text of this opinion can be corrected before the opinion is published in the* *Pacific Reporter*. *Readers are encouraged to bring typographical or other* *formal errors to the attention of the Clerk of the Appellate Courts:*
*303 K Street, Anchorage, Alaska 99501*
*Fax: (907) 264-0878*
*E-mail: corrections@akcourts.us*

IN THE COURT OF APPEALS OF THE STATE OF ALASKA

KENNETH HAROLD KOMAKHUK JR.,

Appellant,

v.

STATE OF ALASKA,

Appellee.

Court of Appeals No. A-12655
Trial Court No. 3AN-15-08600 CR

O P I N I O N

No. 2666 — January 31, 2020

Appeal from the Superior Court, Third Judicial District, Anchorage, Michael D. Corey, Judge.

Appearances: Bradly A. Carlson, The Law Office of Bradly A. Carlson, LLC, under contract with the Public Defender Agency, and Quinlan Steiner, Public Defender, Anchorage, for the Appellant. A. James Klugman, Assistant District Attorney, Anchorage, and Jahna Lindemuth, Attorney General, Juneau, for the Appellee.

Before: Allard, Chief Judge, Harbison, Judge, and Smith, Senior Superior Court Judge.[*]

Judge ALLARD, writing for the Court.
Judge SMITH, concurring.

---

[*] Sitting by assignment made pursuant to Article IV, Section 11 of the Alaska Constitution and Administrative Rule 23(a).

Kenneth Harold Komakhuk Jr. was convicted, following a jury trial, of third-degree assault (under a recidivist theory) based on an altercation Komakhuk had with a bellman at the Marriott Hotel in downtown Anchorage.[1]  At trial, Komakhuk testified that he acted in self-defense and that the bellman was the initial aggressor.[2]  Over Komakhuk's objection, the State was allowed to introduce in its case-in-chief two character witnesses who testified that, in their opinions, Komakhuk was an aggressive and violent person when intoxicated.  Both witnesses had limited knowledge of Komakhuk and they had each formed their opinions of his character based on a single prior incident in which Komakhuk had acted violently toward them in their capacity as law enforcement agents.

On appeal, Komakhuk argues that the trial court failed to fulfill its gate-keeping role with regard to this character evidence and he asserts that the error prejudiced his right to a fair trial.  For the reasons explained here, we conclude that admission of this challenged character evidence requires reversal of Komakhuk's conviction.

*Factual background*

On July 28, 2015, there was an altercation between Manuel Leal, who was working as a bellman at the Marriott Hotel, and Komakhuk, who was homeless at the

---

[1]   AS 11.41.220(a)(5) (recklessly causing physical injury to a person while having two or more prior qualifying convictions for assault).

[2]   *See* AS 11.81.330(a) ("A person is justified in using nondeadly force upon another when and to the extent the person reasonably believes it is necessary for self-defense against what the person reasonably believes to be the use of unlawful force by the other person, unless [certain exceptions apply].").

time.  At trial, the two men testified, presenting two different versions of events.  No other witness to the altercation testified.

Leal testified that he was approached by an intoxicated Komakhuk while helping a guest at the hotel valet.  Komakhuk asked for cigarettes, and when Leal said he had none and asked him to leave, Komakhuk became aggressive.  According to Leal, Komakhuk left but he returned to the property a short time later and began interacting with a guest in the smoking area.  Leal testified that he was concerned Komakhuk was bothering her, and he again told Komakhuk to leave.  According to Leal, when he stepped in between the guest and Komakhuk, Komakhuk responded by pushing him, calling him a bitch, and then punching him in the face several times.  After Komakhuk fled the property, Marriott staff contacted the police.

In contrast to Leal's testimony, Komakhuk testified that Leal was the initial aggressor in the altercation.  Komakhuk testified that, on the day of the incident, he was intoxicated and with his friend, another homeless man.  While on the way to the bus station, this friend asked a woman outside the Marriott hotel for a cigarette.  Komakhuk testified that he walked over to the woman and apologized for his friend's behavior, but Leal misinterpreted this exchange as Komakhuk threatening her.  According to Komakhuk, Leal walked over, grabbed Komakhuk by the vest, and started pushing him. Komakhuk testified that after Leal laid his hands on him, he responded by trying to push Leal away, at which point Leal swung at him.  Komakhuk was able to dodge the punch, and he admitted to then hitting Leal a couple times — although he claimed he did so only in self-defense after Leal tried to punch him.

*The State's character witnesses*

Prior to trial, Komakhuk filed a notice of self-defense.[3] In response, the State filed a motion under Alaska Evidence Rule 404(a)(2), seeking to rebut this self-defense claim by introducing character witnesses who would testify at trial that Komakhuk was a violent person.[4]

At the evidentiary hearing on the State's motion, the State presented two potential character witnesses.[5] The first witness, Amanda Ivins, worked for Anchorage Safety Patrol. In that role, she took protective custody of intoxicated individuals who could not take care of themselves or who were a threat to others. Ivins testified that she had interacted with Komakhuk "less than a half dozen times" through her work on the safety patrol. However, her opinion that Komakhuk was a violent person was based on a single incident at the sleep-off center in which Komakhuk had become angry and assaultive after being woken up from an alcoholic blackout. This incident occurred thirteen months before the altercation with Leal.

The State's second proposed character witness was Anchorage Police Officer Christopher Simmons. Officer Simmons was involved in the arrest of Komakhuk in the present case. However, approximately a year and half before the altercation in the

---

[3] *See* Alaska R. Crim. P. 16(c)(5) (providing that "the defendant shall inform the prosecutor of the defendant's intention to rely upon a defense of . . . justification").

[4] *See* Alaska Evid. R. 404(a)(2) (making admissible, as an exception to the general rule against character evidence for, "evidence of a relevant character trait of an accused or of a character trait for peacefulness of the victim offered by the prosecution in a case to rebut evidence that the victim was the first aggressor"); *see also* Alaska Evid. R. 405(a) (limiting evidence of character to testimony "as to reputation in any community or group in which the individual habitually associated" or testimony "in the form of an opinion").

[5] *See* Alaska Evid. R. 404(a)(2)(i)-(iii) (requiring a hearing prior to the admission of character evidence).

current case, Simmons had an interaction with Komakhuk and it was this interaction that formed the basis for his opinion that Komakhuk was a violent person. During this interaction, an intoxicated Komakhuk "became belligerent" with the officer and had to be placed in handcuffs (and, ultimately, total restraints).

After both witnesses testified, the superior court heard argument about the underlying motion. Komakhuk's attorney argued that the State had failed to satisfy the foundational requirements under *Hunter v. State*, asserting that the limited interactions Ivins and Simmons had with Komakhuk were insufficient to allow them to meaningfully evaluate his character for aggression "in all the varying situations of life."[6] The attorney noted that both witnesses had relied on how Komakhuk acted "when he was detained against his will for being intoxicated"— a specific circumstance that could have been a departure from, rather than reflective of, a person's normal character.

The prosecutor argued that there was a sufficient basis for the jury to hear this opinion testimony because both witnesses had "personal knowledge about Mr. Komakhuk and about his character because they personally interacted with him."

The trial court agreed with the prosecutor that no further showing was required, and that the opinions of both character witnesses was admissible. In its ruling, the trial court noted the existence of popular social science literature that suggested that "humans do reach opinions fairly rapidly with respect to an individual's character."

At trial, the State was allowed to present both character witnesses in its case-in-chief. In fact, the State's first witness at trial was Amanda Ivins, the Anchorage Safety Patrol character witness. Ivins testified that, based on her personal encounters with Komakhuk, she was of the opinion that "[w]hen he is intoxicated . . . [Komakhuk] does not control his behaviors very well, and is aggressive, especially towards authority."

---

[6] *Hunter v. State*, 307 P.3d 8, 16-17 (Alaska App. 2013).

On cross-examination, Ivins acknowledged that she was not present during the altercation with Leal.

Officer Simmons testified later in the State's case-in-chief. Most of his testimony related to the arrest in the current case. But the final question posed on direct examination elicited testimony that, based on his personal exposure to Komakhuk, Officer Simmons developed an opinion that "[Komakhuk] is violent," at least when he is under the influence.

Following deliberations, the jury convicted Komakhuk of third-degree assault. This appeal followed.

*Alaska Evidence Rule 404(a)(2) and the Hunter test*

Under federal law and the law of most jurisdictions, the prosecution in a criminal case is allowed to introduce character witnesses against a defendant *only if* the defendant has "opened the door" to such evidence either by introducing character witnesses of their own or by attacking the character of the victim.[7] Thus, if a defendant

---

[7]   *See, e.g.*, Fed. R. Evid. 404(a)(2)(A)-(B); Ala. R. Evid. 404(a)(1); Ariz. R. Evid. 404(a)(1); Ark. R. Evid. 404(a)(1); Cal. Evid. Code § 1103(a)-(b); Co. R. Evid. 404(a)(1); Conn. Code Evid. § 4-4(a)(1)-(2); Del. R. Evid. 404(a)(2)(A)-(B); Fla. Stat. Ann. § 90.404(1)(a)-(b)(1); Haw. Rev. Stat. Ann. § 626-1, Rule 404(a)(1); Idaho R. Evid. 404(a)(2)(A)-(B); Ill. R. Evid. 404(a)(1); Ind. R. Evid. 404(a)(2)(A)-(B); Iowa R. Civ. P. 5.404(a)(2)(A)(i)-(ii); Kan. Stat. Ann. § 60-447; Ky. R. Evid. 404(a)(1); La. Code Evid. Art. 404(A)(1)-(2)(a); Mass. R. Evid. 404(a)(2); Me. R. Evid. 404(a)(2); Md. Rule 5-404(a)(2)(A)-(B); Mich. R. Evid. 404(a)(1); Minn. R. Evid. 404(a)(1); Miss. R. Evid. 404(a)(2)(A)-(B); Mont. R. Evid. 404(a)(1); Neb. Rev. Stat. Ann. § 27-404(1)(a); Nev. Rev. Stat. Ann. § 48.045(1)(a)-(b); N.H. R. Evid. 404(a)(1); N.J. R. Evid. 404(a)(1); N.M. R. Evid. 11-404(A)(2)(a)-(b); N.D. R. Evid. 404(a)(2)(A)-(B); Ohio R. Evid. 404(A)(1); Okla. Stat. Ann. tit. 12, § 2404(A)(1); Or. Rev. Stat. Ann. § 40.170(2)(A); Pa. R. Evid. 404(a)(2)(A)-(B); R.I. R. Evid. 404(a)(1); S.C. R. Evid. 404(a)(1); S.D. Codified Laws § 19-

(continued...)

introduces evidence of their character for peacefulness, the prosecution is entitled to introduce evidence of the defendant's character for violence.[8] Likewise, if the defendant introduces evidence of the victim's character for violence, the prosecution is entitled to introduce evidence of the defendant's character for violence (as well as evidence of the victim's character for peacefulness).[9]

There is also a special rule that applies primarily in homicide cases. Under this rule, the prosecution is entitled to introduce evidence of a victim's character for peacefulness to rebut evidence that the victim was the first aggressor.[10] In other words,

---

[7] (...continued)
19-404(a)(2)(A); Tenn. R. Evid. 404(a)(1); Tex. R. Evid. 404(a)(2)(A); Utah R. Evid. 404(a)(2)(A)-(B); Vt. R. Evid. 404(a)(1); Va. Sup. Ct. R. 2:404(a)(1); Wash. R. Evid. 404(a)(1); W. Va. R. Evid. 404(a)(2)(A)-(B); Wis. Stat. Ann. § 904.04(1)(a); Wyo. R. Evid. 404(a)(1).

[8] *See* 22B Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure, Evidence* § 5238 (2d ed. 2019) (explaining that Federal Rule of Evidence 404(a)(2)(A) "codifie[d] the common law rule that gave the defense a choice: do nothing and preserve the protection or open up defendant's character to attack by introducing some trait of character that made it less likely he committed the charged crime").

[9] *See id.* at § 5239 (noting that "when the defense attacks the character of the victim, the prosecutor can introduce evidence of the defendant's character under the 'tit-for-tat' exception, originally introduced by amendments in 2000 and now, as of 2011, found within [Federal Evidence] Rule 404(a)(2)(B)(ii)"). We note that not all jurisdictions permit the "tit-for-tat" exception. *See, e.g.*, Co. R. Evid. 404(a)(2); Ky. R. Evid. 404(a)(2); Miss. R. Evid. 404(a)(2)(B); Or. Rev. Stat. Ann. § 40.170(2)(A)(2)(b); Wis. Stat. Ann. § 904.04(1)(b); Wyo. R. Evid. 404(a)(2).

[10] Many jurisdictions, including the federal courts, limit this special rule to homicide cases under the theory that "a dead victim cannot attest to his peaceable behavior during the fatal encounter." *See* 1 Kenneth S. Broun et. al, *McCormick On Evidence* § 193 (8th ed. 2020); *see also* 22B Charles Alan Wright & Kenneth W. Graham, Jr., *Federal Practice & Procedure, Evidence* § 5239 (2d ed. 2019) (noting that special rule generally applies only to

(continued...)

whenever a defendant claims self-defense and offers any type of evidence that the victim was the first aggressor, the prosecution can respond with evidence of the peaceable character of the victim. But this special rule is limited to evidence of a victim's peaceable character; it does not extend to evidence of the defendant's character.[11]

Alaska law is different. In 1994, the Alaska legislature amended Alaska Evidence Rule 404(a)(2) to permit the prosecution to introduce "evidence of a relevant character trait of an accused" to rebut evidence that the victim was the first aggressor.[12] In other words, under Alaska Evidence Rule 404(a)(2), the prosecution is entitled to introduce evidence of a defendant's character for violence in response to evidence that the defendant acted in self-defense, even if the defendant has not otherwise opened the door to such evidence by attacking the victim's character or by introducing character evidence of the defendant's own character for peacefulness. As already mentioned, other jurisdictions permit the prosecution to introduce evidence of *the victim's* character for

_____

[10] (...continued)
homicide cases because the victim "can speak for himself" in other types of cases).

[11] *See, e.g.*, *United States v. Fountain*, 768 F.2d 790, 795 (7th Cir. 1985) (holding that the defendant does not put character in issue simply by pleading self-defense and that when the accused offers such proof of self-defense, it does not permit proof of the accused's character trait for violence); *State v. Austin*, 686 N.E.2d 324, 326 (Ohio App. 1996) (holding that defendant's claim of self-defense and evidence of first aggression by victim does not open the door to evidence of the defendant's character); *Kwallek v. State*, 596 P.2d 1372, 1378-79 (Wyo. 1979) (holding that defendant's self-defense testimony does not open the door to adverse character evidence); *see also State v. Faust*, 660 N.W.2d 844, 861 (Neb. 2003) ("In criminal cases, the State is prohibited from attempting to prove the guilt of the accused by initiating an attack on his or her character"); *Roberts v. State*, 866 S.W.2d 773, 775 (Tex. App. 1993) ("Generally, it is reversible error for the State to put the reputation of the accused in issue when he himself has not done so.").

[12] SLA 1994, ch. 116, § 2 ("An Act amending Alaska Rule of Evidence 404, relating to the admissibility of certain character evidence in court proceedings.").

peacefulness to rebut evidence that the victim was the first aggressor.[13]  But Alaska law appears to be alone in permitting evidence of *the defendant's* character to rebut evidence that the victim was the first aggressor.[14]

In *Allen v. State*, we upheld the constitutionality of Alaska Evidence Rule 404(a)(2) against a due process challenge.[15]  But this holding was conditioned on the

---

[13]  *See, e.g.*, Fed. R. Evid. 404(a)(2)(C) (permits evidence of victim's character for peacefulness in homicide case to rebut evidence that victim was first aggressor); Ark. R. Evid. 404(a)(2) (same); Del. R. Evid. 404(a)(2) (same); Haw. Rev. Stat. Ann. § 626-1, Rule 404(a)(2) (same); Idaho R. Evid. 404(a)(2)(C) (same); Ind. R. Evid. 404(a)(2)(C) (same); Ky. R. Evid. 404(a)(2) (same); La. Code Evid. 404(A)(2)(b) (same); Md. Rule 5-404(a)(2)(C) (same); Mich. R. Evid. 404(a)(2) (same); Minn. R. Evid. 404(a)(2) (same); Neb. Rev. Stat. Ann. § 27-404(1)(b) (same); N.H. R. Evid. 404(a) (same); N.J. R. Evid. 404(a)(2) (same); N.M. R. Evid. 11-404(A)(2)(c) (same); N.D. R. Evid. 404(a)(2)(C) (same); Ohio R. Evid. 404(A)(2) (same); Okla. Stat. Ann. tit. 12, § 2404(A)(2) (same); Or. Rev. Stat. Ann. § 40.170(2)(b) (same); Pa. R. Evid. 404(a)(2)(C) (same); R.I. R. Evid. 404(a)(2) (same); S.C. R. Evid. 404(a)(2)(C) (same); S.D. Codified Laws § 19-19-404(a)(2)(C) (same); Tenn. R. Evid. 404(a)(2) (same); Utah R. Evid. 404(a)(2)(C) (same); Vt. R. Evid. 404(a)(2) (same); Va. Sup. Ct. R. 2:404(a)(2) (same); Wash. R. Evid. 404(a)(2) (same); W. Va. R. Evid. 404(a)(2)(C) (same); Wis. Stat. Ann. § 904.04(1)(b) (same); Wyo. R. Evid. 404(a)(2) (same); *see also* Conn. Code Evid. § 4-4(a)(2) (permits evidence of victim's character for peacefulness in homicide and assault cases to rebut evidence that victim was first aggressor); Ill. R. Evid. 404(a)(2) (permits evidence of victim's character for peacefulness in homicide and battery cases to rebut evidence that victim was first aggressor);  Iowa R. Civ. P. 5.404(a)(2)(A)(iii) (permits evidence of victim's character for peacefulness when victim is unavailable to testify "due to death or physical or mental incapacity"); Mont. R. Evid. 404(a)(2) (permits evidence of victim's character for peacefulness in homicide and assault cases to rebut evidence that victim was first aggressor).

[14]  *See* Alaska R. Evid. 404(a)(2); *see also* Drew D. Dropkin & James H. McComas, *On a Collision Course: Pure Propensity Evidence and Due Process in Alaska*, 177 Alaska L. Rev. 183-84 (2001) (noting distinction between federal law and Alaska law).

[15]  *Allen v. State*, 945 P.2d 1233, 1239 (Alaska App. 1997).  We note that Komakhuk does not raise a constitutional challenge here.  We also note that our decision in *Allen* did not

(continued...)

existence of a "judicial safeguard."[16]  This judicial safeguard requires the trial judge to hold a separate hearing outside the presence of the jury to determine if an adequate foundation for the proposed character evidence is met.[17]  It also requires the judge to "actively weigh" the probative force of the proposed character evidence against its potential for unfair prejudice.[18]

We reiterated the importance of this judicial safeguard in *Hunter v. State*.[19] In *Hunter*, the superior court allowed the State to introduce two law enforcement-related witnesses to testify to the defendant's character for aggression and violence.[20]

The first character witness, a police detective, had never personally encountered the defendant, but as the lead investigator in his case, she learned that Hunter possessed "the tendency towards violence and aggression" through her examination of police files and interviews with other police officers.[21]  We held that admission of this character evidence was reversible error because the detective did not have sufficient personal knowledge of Hunter's reputation within the community.[22]

---

[15]  (...continued)
address the legislative history of Alaska Evidence Rule 404(a)(2), some of which suggests a legislative intent at odds with the plain language of the rule.

[16]  *Id.* (emphasizing that the "legislature has specifically provided a judicial safeguard against abuse of character evidence").

[17]  *Id.* at 1238-39.

[18]  *See id.*; *see also* Alaska R. Evid. 404(a)(2)(ii).

[19]  *Hunter v. State*, 307 P.3d 8 (Alaska App. 2013).

[20]  *Id.* at 10.

[21]  *Id.* at 10-11.

[22]  *Id.* at 15 ("The trustworthiness of reputation testimony stems from the fact that a
(continued...)

The second character witness in *Hunter* was a police officer who testified that, in his opinion, the defendant had a character for aggression.[23] This opinion was based on a single prior incident with the defendant.[24] The trial judge took a passive approach toward the admissibility of this evidence, concluding that, if the officer had, indeed, formed an opinion about Hunter's character based on this single episode, then the officer should be permitted to express that opinion.[25] According to the trial judge, "it was up to Hunter's attorney to cross-examine [the officer] if he wished to show that [the officer's] opinion was unsubstantiated or based on inadequate information."[26]

On appeal, this Court criticized the passivity of this approach, characterizing it as "an abrogation of the judge's gate-keeping function."[27] We emphasized that, before such evidence can be introduced, the law requires "a foundational showing that the witness personally knows the other person well enough to have formed a reliable opinion concerning the particular character trait at issue."[28] We also explained that "character," in this context, means "a person's tendency to act [in a

---

[22] (...continued)
person is observed in his day[-]to[-]day activities by other members of the community[,] and these observations are discussed [within the community].") (alteration in original).

[23] *Id.* at 16.

[24] *Id.*

[25] *Id.* at 16-17.

[26] *Id.* at 17.

[27] *Id.*; *see also United States v. Dotson*, 799 F.2d 189, 193 (5th Cir. 1986) (reversing conviction and noting that"[t]he record should reflect some indication that the court did not merely let down the bars to the expression of any opinions the prosecutor's witnesses wanted to voice").

[28] *Hunter*, 307 P.3d at 16.

particular manner] in all the varying situations of life."[29] Lastly, we cautioned trial courts that a person's underlying character "must be distinguished" from a person's individual misdeeds.[30]

In *Hunter*, we outlined several factors that the trial court should consider when determining whether an adequate foundation has been shown for the proposed character evidence. These factors include: (1) the nature of the relationship between the witness and the other person; (2) the length and recency of that relationship; and (3) the frequency and nature of their contacts.[31] Notably, all of these factors presuppose that the witness has more than a passing familiarity with the person. We stated that it is "conceivable" that a single act might convincingly reveal a person's character, but we emphasized that this would only be true "if that short acquaintance were marked by striking occurrences or interactions which clearly demonstrate the character trait at issue."[32]

---

[29] *Id.* (alteration in original); *see also Government of Virgin Islands v. Petersen*, 553 F.2d 324, 329 (3rd Cir. 1977) (observation of defendant's behavior over time is the recognized basis for both opinion and reputation testimony about character).

[30] *Hunter*, 307 P.3d at 16 ("A witness who has observed another person act peacefully or violently in the past may still not know enough about the person to offer a meaningful opinion concerning the person's underlying character for peacefulness or violence."); *see also State v. Irby*, 368 N.W.2d 19, 23 (Minn. App. 1985) (affirming exclusion of character evidence when witness had formed an opinion of the victim's character based on only one short incident); *State v. Maxwell*, 18 P.3d 438, 445 (Or. App. 2001) (affirming exclusion of character witness where witness based opinion on single encounter because "[t]o hold otherwise would mean that the distinction between character traits and individual misdeeds would be obliterated").

[31] *Hunter*, 307 P.3d at 16.

[32] *Id.*

Although the trial judge in the current case was alerted to our decision in *Hunter*, the judge did not address the factors outlined in that decision and made no findings about the nature of the relationship between the defendant and the witnesses, the length or recency of that relationship, or the frequency and nature of their contacts. Instead, the trial judge primarily relied on popular social science for the proposition that humans are inclined to form opinions on relatively limited data. Like the trial judge in *Hunter*, the judge seemed to believe that the jury should be allowed to hear any opinions that these witnesses may have formed about the defendant, and there was no need to "actively weigh" the purported probative value of these character witnesses against their potential for unfair prejudice.

The need to "actively weigh" the probative value of this proposed evidence against the potential for unfair prejudice was particularly high in this case because both of the State's character witnesses had connections to law enforcement.[33] We have previously cautioned against the use of law enforcement witnesses as character witnesses against the defendant. In *Hammer v. State*, we reversed a defendant's conviction based on the State's use of the defendant's probation officer as a character witness against him.[34] As we explained in *Hammer*, the fact that the defendant's probation officer was a character witness "inherently created a substantial possibility of unfair prejudice"

---

[33] We also note that the trial judge should have been attuned to this potential for unfair prejudice because the judge had properly bifurcated the proceedings precisely so the jury would not learn about Komakhuk's criminal history. *See Ostlund v. State*, 51 P.3d 938, 941-42 (Alaska App. 2002) (noting that the purpose of bifurcating a trial involving prior convictions as an element of a charge is to prevent the jury from hearing evidence of the defendant's prior convictions before deciding whether he committed the current alleged act).

[34] *Hammer v. State*, 2003 WL 21279539, at *2 (Alaska App. June 4, 2003) (unpublished).

because the jury was essentially informed that the defendant had a criminal history and that he was on felony probation.[35]

In *Howard v. State*, we affirmed a trial court's decision to allow a local police sergeant to testify to the defendant's character for violence.[36] But we predicated our decision on the fact that the trial took place in a small village where an officer would have reason to be familiar with the defendant outside of his official police duties.[37] We noted that the same considerations might not be true in larger cities where a law enforcement officer would be less likely to be familiar with a defendant except through his capacity as a law enforcement officer.[38] We also specifically cautioned trial courts that our decision in *Howard* "should not be read as a blanket approval of the State's calling police officers or other justice system officials to testify about the character of a defendant."[39]

Here, the State argues that any error in admitting the testimony of the two law-enforcement related character witnesses was harmless because Komakhuk's claim of self-defense was weak. The State points out that Komakhuk never directly testified that he was afraid of Leal, nor did he clearly establish his right to use force under what

---

[35] *Id.*

[36] *Howard v. State*, 239 P.3d 426, 428 (Alaska App. 2010).

[37] *Id.* at 429-30 (noting that the small size of the community made it a "reasonable possibility" that the officer was acquainted with the defendant "because they were residents of the same community" and not "through police business," and that the judge took "affirmative steps" to minimize prejudice, such as precluding the witness from testifying about how he knew the defendant and the defendant's drug and alcohol use, as well as from using the term "violent").

[38] *Id.* at 430.

[39] *Id.* at 429.

appeared to be trespass circumstances. The State also points out that neither party referred to the character witnesses in closing argument.

The test for determining whether an erroneous evidentiary ruling constitutes harmless error is whether it can fairly be said that the error did not appreciably affect the jury's verdict.[40] We acknowledge that here, the character testimony was relatively brief and it was not emphasized during closing argument. However, it nevertheless occupied a central position in the State's case. Significantly, the State began its case-in-chief with Amanda Ivins, the Anchorage Safety Patrol Officer. This means that the first evidence that the jury heard in this case was a State witness opining that the defendant was an aggressive person. The jury also heard this damning evidence before any evidence that the victim was the first aggressor was even introduced.

As the United States Supreme Court has noted, the primary due process concern with character evidence is that "it is said to weigh too much with the jury" and "to so overpersuade them as to prejudge one with a bad general record and deny him a fair opportunity to defend against a particular charge."[41] Fundamentally, it is the role of the trial judge to ensure "that the defendant is tried for the crime currently charged — not for the things that the defendant might have done on other occasions, and not for the kind of person that the defendant might be."[42] Our review of the record in the current case leads us to the conclusion that the trial court abrogated this responsibility. Moreover, given the centrality of the character evidence to the State's case-in-chief and the absence of any other witness testimony to the incident, we conclude that we cannot fairly say that this evidence did not appreciably affect the jury's verdict. Accordingly, reversal of

---

[40] *Love v. State*, 457 P.2d 622, 634 (Alaska 1969).

[41] *Michelson v. United States*, 335 U.S. 469, 475-76 (1948).

[42] *Bingaman v. State*, 76 P.3d 398, 414 (Alaska App. 2003).

Komakhuk's conviction and an opportunity for a retrial without the improper character witnesses is required.

*Conclusion*

The judgment of the superior court is REVERSED.

Judge SMITH, concurring.

I write separately to highlight my concern over the dangers associated with admitting character evidence intended to show that a defendant is a violent person when that evidence is predicated on a single interaction with the defendant. In light of the highly prejudicial nature of evidence demonstrating a propensity for violence, trial court judges should be particularly rigorous in inquiring into the circumstances surrounding the incident that forms the basis for such testimony and should rarely, if ever, admit it.

It is a commonplace that while propensity evidence is relevant, it is also inherently prejudicial, since it can readily lead a jury to conclude that a defendant committed the act with which they are charged purely because they have a propensity for committing that kind of act. In particular, as relevant (and obvious) here, a juror could well decide that because of their violent character, the defendant was more likely to have attacked the alleged victim.

Notwithstanding this danger, Alaska Evidence Rule 404(a)(2) allows the State to introduce evidence of a defendant's violent character if the defendant raises a claim of self-defense.[1] Recognizing the even greater danger posed by allowing the jury to hear evidence of specific violent acts to support testimony that the defendant is a

---

[1] As the Court points out, Alaska is unique in allowing the State to introduce such evidence without the defendant first opening the door by attacking the victim's character or presenting their own character witnesses. Although the constitutionality of this choice was upheld in *Allen v. State*, 945 P.2d 1233 (Alaska App. 1997), and with all due respect to the Court, I do not believe that the *Allen* Court sufficiently analyzed the substantial dangers associated with allowing evidence of a character for violence simply because a defendant claims self-defense. Indeed, admitting this kind of evidence under these circumstances effectively acts to punish a defendant who has a reasonable claim of self-defense, particularly where the victim was the first aggressor and the inquiry should be focused entirely on whether the defendant's response meets the relevant standards for self-defense.

violent person, Alaska Evidence Rule 405 provides that such character testimony can only be in the form of opinion or reputation testimony — the witness may only testify as to either the defendant's reputation for violence or on their opinion that the defendant is a violent person.[2]

There is an obvious Catch-22 associated with allowing a witness to opine as to whether a person is violent. Since the opinion must be based on the witness's personal experience with the defendant, the only basis the witness has for coming to that opinion is the actual conduct of the defendant — the witness believes that the defendant is a violent person because the defendant has acted violently. Therefore, if defense counsel is to challenge the basis of the witness's opinion at trial, they will have to inquire into what led the witness to come to that opinion, which necessarily will require the witness to recount the violent acts they observed, thereby bringing to the jury's attention the very prior bad acts that Evidence Rule 405 so properly precludes.[3] A lawyer thus faces the proverbial Hobson's choice: faced with defending against a witness's opinion that their client is a violent person, they must either let it pass or accept that if they want to challenge the opinion as unsubstantiated, the jury will hear about all of the bad things their client allegedly did.

This concern is magnified if, as here, the evidence is based on one prior incident. It is much more difficult to credit an opinion if it is based on one data point, which means that it is correspondingly more important to attack that opinion on the

---

[2] Alaska Evid. R. 405(a) ("In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation in any community or group in which the individual habitually associated or by testimony in the form of an opinion.").

[3] *Id.* (allowing inquiry into "relevant specific instances of conduct" on cross-examination only).

ground that it is based on very little interaction with the defendant. But pointing out to the jury that the opinion is based on only one incident necessarily opens the door to testimony about that one incident, and if that incident is significant enough to survive the *Hunter* analysis, then testimony about that incident could very well be disastrous for the defendant.

As this Court emphasized in its opinion in this case, the gatekeeper role of a trial court is particularly important given the intrinsic dangers with allowing witnesses to testify that a defendant is a violent person. The factors set forth in *Hunter* are very valuable in assuring that this role is followed. But they do not adequately address testimony based on a single incident, since they focus entirely on the relationship between the witness and the defendant; if there has only been one contact between the defendant and the witness, then it is highly unlikely that the witness knows the defendant very well, if at all. This in turn complicates the trial judge's task, since the Court was careful in *Hunter* not to preclude testimony based on a single incident, yet provided little guidance other than to require judges to conduct the necessary foundational analysis.

This hole can be filled in substantial part by looking in detail at the circumstances surrounding the incident on which the witness testifies. This is because while an incident might be so striking as to lead one to infer that a person is a dangerous person, the underlying circumstances might not support that conclusion — or at least might sufficiently call it into question so that it would not be appropriate to allow the witness's testimony.

For example, one could reasonably conclude that a dog is dangerous because it attacked a pedestrian hiking with a frame backpack without any apparent provocation. But if it turned out (as was the case with my family dog) that an otherwise entirely peaceful, friendly dog for some reason was triggered by a person wearing a frame backpack, then it would not be appropriate to allow a person who witnessed the

attack to testify in a dog-bite case that the dog was a violent dog. Rather, at most, they could say that the dog reacted violently in one very specific situation, which would have no bearing on the case unless the victim was wearing a backpack.

The same can obviously be true in assault cases. One could perhaps conclude that a person is dangerous because they punched the first baseman after being thrown out or because they yelled at their spouse and violently pushed them away for no apparent reason. But it could well be that the person who was thrown out had never gotten a hit in their lives, leading to a frustrated punch by an otherwise peaceful person, or that the person had just learned that their spouse was sleeping with their best friend. In both cases, what may well have been a very striking event, in fact, would not support a conclusion that the person who committed the act is a violent person.

The witnesses in this case had very little direct interaction with Komakhuk. It may well be arguable that the single incidents on which they based their opinion were memorable. But there is no indication in the record as to the circumstances under which Komakhuk was awoken at the sleep-off center, much less why he may have reacted the way he did upon being awoken. Aside from the fact that he was drunk, the same is true with respect to Komakhuk's behavior when he was arrested. These are important considerations, for there may be meaningful circumstances underlying his reactions, other than his intoxication, that have no bearing on the assault against Leal with which Komakhuk was charged. For example, there may be reasons why Komakhuk reacts inappropriately when he is awoken, particularly if he is hungover and tired, that were not present during the altercation with the victim in this case. Similarly, the record is not clear as to why Komakhuk became angry and assaultive during his arrest, much less whether the same sort of triggers might apply in this case.

My point, in short, is that there are potentially a myriad of circumstances underlying what is apparently a striking incident of violent behavior that may belie a

conclusion that a person is violent, or at the very least call into question whether the opinion is adequately based in light of the specific circumstances of the offense with which the person is charged. Given the significant danger that the jury will place undue weight on a defendant described as being "violent" by a witness (particularly a law enforcement witness), the gate-keeping function of a trial judge demands heightened vigilance in assessing the context in which a lone encounter forms the basis of the witness's opinion. If trial judges engage in such a careful examination, and then balance the probative versus prejudicial impact under Evidence Rule 403, I believe they should (and will) rarely, if ever, allow a witness to testify to a defendant's violent character based on a single incident.